## E. EDELMANN & CO. v. TRIPLE-A SPECIALTY CO.

### No. 5978.

Circuit Court of Appeals, Seventh Circuit.

Feb. 17, 1937.

Otto Raymond Barnett, Percival H. Truman, and Lawrence T. Barnett, all of Chicago, Ill., for appellant.

George A. Chritton and Russell Wiles, both of Chicago, Ill. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., of counsel), for appellee.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

Appellee brought suit in the District Court to secure a declaratory judgment, averring that appellant had wrongfully charged appellee with infringement of appellant's patent for a hydrometer to Edelmann No. 1,800,139 and had notified the trade of such untrue charges, and asking the court, first, to decide whether the patent is valid and, if so, whether it is infringed by appellee; and, second, to enjoin appellant from publication of such charges. The court found that it had jurisdiction of the parties and subject-matter, despite lack of diversity of citizenship. It did not pass upon the validity of the patent but declared appellee's device noninfringing and awarded an accounting for such damages, if any, as had accrued because of circulation of wrongful charges of infringement.

Appellant's first contention is that the court was without jurisdiction, because, there being no diversity of citizenship, no federal question was involved; that the suit is not one arising under the patent laws but under general jurisdiction in equity; and that the Declaratory Judgment Act is ineffective to confer jurisdiction.

The act (Jud.Code § 274d, 28 U.S.C.A. § 400) provides in part that: "In cases of actual controversy * * * the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration."

Obviously the language does not create new substantive rights or legal relationships but adds, to remedies previously existing, an additional one for relief in the form of a judgment declaring, in cases of actual controversy, the rights of the parties. Equally as clearly, prior to the passage of the act, no one had a right under the patent laws to initiate suits for affirmative relief in the form of an adjudication that another's patent was invalid or was not infringed. Therefore, appellant contends, the remedy provided by the act does not arise under the patent laws and the court was without jurisdiction.

It is clear that there is an actual controversy between the parties, whether appellee infringes the Edelmann patent. Appellant so charged, stating to appellee's customers and prospective customers that unless the infringement should be discontinued, suit would be entered against appellee and dealers.

Was the controversy one arising under the patent laws?

A somewhat similar question was presented to this court in Webster Co. v. Society for Visual Education, 83 F.(2d) 47, 48. There, diversity of citizenship existed, but there was presented the further question of whether the suit had been begun in the right district. There, as here, the action was for a declaratory judgment, declaring defendant's patents invalid. If the jurisdiction depended upon diversity of citizenship, it was rightfully brought in the district wherein either plaintiff or defendant resided. (Jud.Code § 51, 28 U.S.C.A. § 112.) If it depended upon the existence of a federal question under the patent laws, it could be maintained only in the district where defendant resided. The court held that, irrespective of existence of diversity of citizenship, the suit was, essentially, one under the patent laws and could not be maintained in a district where defendant did not reside, saying: "While here there was diversity of citizenship between the parties, it is clear that jurisdiction was founded not on that fact, but on rights arising under the patent laws, hence the latter provision does not apply." This conclusion having been essential to the decision made in that case, it must stand as the law of this circuit unless overruled. Appellant contends that the court did not fully consider the question in all its aspects and that, upon further consideration, we should decide otherwise.

We adhere to the conclusion then stated. Jurisdiction of the court was properly

invoked in the present case. The cause arose under the patent laws of the United States; consequently jurisdiction existed, irrespective of diversity of citizenship. ·

The Declaratory Judgment Act merely introduced additional remedies. It modified the law only as to procedure and, though the right to such relief ·has been in some cases inherent, the statute extended greatly the situations under which such relief may be claimed. It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued. But the controversy is the same as previously. Heretofore the owner of the patent might sue to enjoin infringement; now the alleged infringer may sue. But the controversy between the parties as to whether a patent is valid, and whether infringement exists is in either instance essentially one arising under the patent laws of the United States. It is of no moment, in the determination of the character of the relief sought, that the suit is brought by the alleged infringer instead of by the owner. Consequently we are unable to agree with the conclusions of Judge Davis of the Eighth Circuit in the case of International Harvest Hat Company v. Caradine Hat Company (D.C.) 17 F.Supp. 79.

Appellant urges, however, that the prayer for damages because of circulation of charges of infringement among dealers and potential customers, stamps appellee's suit as one to enforce a common-law remedy, namely, recovery of damages for unfair competition. If this were the only end sought and the jurisdiction of the court invoked to secure only that relief, the contention would necessarily prevail. But appellee relies upon two remedies: First, the determination of whether the patent is valid and infringed; and, second, if either of these questions is answered in the negative, whether it is also entitled to damages for violation of its common-law rights arising out of the same facts, plus the additional fact that appellant has wrongfully circulated, among the trade, false charges of infringement. The relief sought upon the second branch is upon a footing entirely apart from that prayed upon the first. Appellee included, as a basis for one sort of relief, facts pertinent only under the patent laws of the

United States, over cases arising under which the federal courts have exclusive jurisdiction. It included also a prayer for another sort of relief of which any state court might have jurisdiction, and which the federal court, in the absence of other basis for jurisdiction, might not entertain except in case of diversity of citizenship.

In Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, the plaintiff charged that an act of the defendant constituted both infringement of a copyright and unfair competition. The District Court dismissed the bill, so far as relief under the copyright laws was concerned, thus disposing of that branch of the case upon the merits. It then proceeded to dismiss the case, so far as it involved unfair competition, for want of jurisdiction; there being no diversity of citizenship. The Supreme Court reversed this decree, holding that the trial court, having acquired jurisdiction under the copyright laws took jurisdiction of the remainder of the controversy. Here appellee might have sought relief from unfair competition in the state court, but it could not there obtain relief declaring the patent invalid or not infringed. Under Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, the court was endowed with jurisdiction also to determine the issues as to fair competition.

Appellant further insists that the court erroneously held the patent not infringed. The claims cover a glass hydrometer of the ordinary type, used in testing various liquids, most commonly automobile radiator solutions. The device contains a relatively fragile glass float, supported by the fluid taken into the hydrometer, upon which are measurement indication figures and which falls to the bottom when the container is empty. Such structures were old. Prior patentees had guarded against breakage of the glass float by placing inside the container, at the sides or on the bottom of the container chamber on the interior, a soft rubber button or cap upon which the float would drop, thus protecting it from breakage. Edelmann's only claim to novelty is in moving this cushion to the bottom of the float, so that· when the latter falls against the bottom, the cap on the bottom of the float protects it from breakage.

If we concede invention, the patent must be limited to the specific construction of the applicant, and its scope restricted to the actual structure described or equiva-

lents thereof not found in prior art structures.

Appellee places no rubber cushion on the bottom of its float. Rather it introduces into the bottom of the container, between the float and the interior bottom of the hydrometer, a thermometer, the purpose of which is to determine the temperature of the fluid inserted in the hydrometer. Upon the top of the thermometer, it places the rubber cushion of the prior art formerly placed on the bottom of the hydrometer. In other words, between the soft rubber cap of the prior art and the bottom of the container, it inserts the thermometer. The latter may be loose or fixed. No additional function accrues when it is movable. If affixed to the bottom, it is merely an extension of the latter. If it is loose, it is likewise an extension, but movable. The thermometer, in itself, is in no sense a float, but the function performed by the rubber cab on its top is actually the function performed by the cushion on the interior of the bottom of the container chamber in the old art. In other words, in operation, the glass float, when the hydrometer is empty, drops onto the soft rubber cap on the top of the thermometer, which in turn rests on the inner bottom of the hydrometer. Remembering the narrow scope of appellant's patent, it is apparent that appellee's device is not within the same but rather within the teaching of the prior art.

The decree is affirmed.