## TREEMOND CO. v. SCHERING CORPORATION.

### No. 7684.

Circuit Court of Appeals, Third Circuit.

Sept. 3, 1941.

Harry Price, of New York City, for appellant.

Fred A. Klein, of New York City (Briesen & Schrenk and Henry C. Quigley, Jr., of New York City, on the brief), for appellee.

Before CLARK, JONES, and GOOD-RICH, Circuit Judges.

CLARK, Circuit Judge.

Some District Courts seem to have found difficulty in freeing themselves from the strait-jacket of the "adversary" conception. They exhibit a tendency toward a narrow and technical interpretation[1] of an Act[2] intended to be construed in accordance with its broad and wise purpose.[3] The case at bar is, we think, a typical instance. The defendant-patentee, a manufacturer, informed the customers of the plaintiff-appellant, an importer and vendor of a certain chemical known as "Estradiol" that it alone had the right to manufacture that chemical. It also had the following advertisement published in a trade journal:

"To Purchasers
of
Estradiol
Notice By
Schering Corporation

United States Letters Patent No. 2,096,-744 for Hydrogenation Products of Follicle Hormones and Method of Producing Same, has been issued to us.

Notice is hereby given to manufacturers and importers that our patent covers the product known as

Estradiol

Estradiol is also known as dihydroxyestrin, dihydrofolliculin or dihydrotheelin. Our patent also covers the process of making the same.

All uses of this material, without our consent, including medicinal, pharmaceutical and cosmetic, are a violation of our giths (grants)[4] under this patent.

We are giving this notice to the trade so that there may be no misunderstanding or doubt as to the exclusiveness of our rights in the United States to the product Estradiol (also known as dihydroxyestrin, dihydrofolliculin or dihydrotheelin).

Schering Corporation
Bloomfield          New Jersey"[5]

Plaintiff-appellant thereupon brought suit for a judgment declaring the defendant's patent invalid and/or not infringed and for an injunction for unfair competition. The learned District Judge dismissed the complaint for the reasons that (1) since the plaintiff alleged that it was not infringing defendant's patent, no actual controversy existed; (2) the plaintiff did not allege that it had been given notice of the claimed infringement, and (3) the notice in the trade publication was made in good faith and therefore could not give rise to a cause of action.

Such a construction of the Federal Declaratory Judgment Act would, in our opinion, destroy its entire usefulness in patent litigation. Before the passage of that Act patentees received greater protection from the law than was warranted by

---

[1] Generally: United States Fidelity & Guaranty Co. v. Koch, 102 F.2d 288, this court reversing District Court (opinion unreported). As to patents: New Discoveries, Inc. v. Wisconsin Alumni Foundation, D.C., 13 F.Supp. 596; Bettis v. Patterson-Ballagh Corp., D.C., 16 F.Supp. 455; R. W. Eldridge Co. v. Southern Handkerchief Mfg. Co., D.C., 23 F.Supp. 179; cf. Zenie Bros. v. Miskend, D.C., 10 F.Supp. 779; Automotive Equipment, Inc. v. Trico Products Corp., D.C., 11 F.Supp. 292.

[2] Federal Declaratory Judgment Act, 28 U.S.C.A. § 400.

[3] "The action implies a recognition of the fact that the social equilibrium is disturbed not merely by an overt violation of private rights, but by a challenge which places them in doubt and uncertainty.

"This has required a broadening of the conception of 'cause of action' and of the view that the judicial process is merely a means of redress for committed physical 'wrongs.' *It required an appreciation of the fact that harm is done and rights are jeopardized by mere dispute or challenge without any physical attack.* The mere existence ·of a cloud, the denial of a right, *the assertion of an unfounded claim*, the existence of conflicting claims, the uncertainty or insecurity occasioned by new events—these phenomena constitute operative facts, the cause for action which creates the 'right of action.' The court in rendering a judicial declaration of rights thus becomes an instrument not merely of curative but also of preventive justice." Borchard, Declaratory Judgments, 1st Ed. 1934, viii (italics ours).

[4] rights.

[5] Drug Trade News, March 28, 1938, Opinion of District Judge, Treemond Co. v. Schering Corp., D.C., 35 F.Supp. 475, 476.

their patent monopoly.[6] Competitors desiring to introduce an article somewhat similar to one already patented met with much difficulty. The patentee could, without bringing suit, publicly claim an infringement and threaten to sue the manufacturer or anyone who dealt with the product in issue. Unless the patentee's actions were of such a character that he might be shackled with the sanctions of the law of unfair competition,[7] he had his alleged infringer at his mercy. Although the competitor's business was gravely injured, he was remediless and in order to survive, he might be forced to make a settlement with a patentee whose claim of infringement was absolutely unfounded.[8] Prior to the New Federal Rules of Civil Procedure,[9] the patentee might even bolster his charges by bringing an action for infringement and publicly advertising the fact to the trade. Then after postponing trial as long as possible, he could move for a dismissal without prejudice[10] and repeat the process.[11]

We think that Professor Borchard has answered both points made by the learned District Judge in such convincing fashion that it is hardly necessary for us to do more than quote what he has to say. In speaking of the failure of a plaintiff to assert infringement and in criticizing the case principally relied on by the court below, he has this to say:

"The decisions in several recent cases seem to be erroneous. In the case of New Discoveries v. Wisconsin Alumni Research Foundation,[12] the plaintiffs were the owners of several patent processes for the manufacture of Vitamin D, and were engaged in the business of selling licenses therefor. The defendants were the owners of allegedly conflicting patents and had threatened the plaintiff and its licensees that they would infringe on defendant's patents and would be liable in damages if they dealt in the article manufactured or about to be manufactured by the plaintiff. But on the ground that the plaintiff had not asserted that he or its licensees were actually using the processes in issue and thus already infringing, District Judge Stone considered the case academic or hypothetical, and dismissed the complaint. This seems altogether too narrow a view of justiciability. Contrary to the Judge's opinion, the fact that defendant notified the plaintiff and its licensees that the use of plaintiff's processes, licenses for which were under current sale, would infringe on defendant's patents, presented an 'actual controversy' concerning the validity of the plaintiff's and defendant's processes. The many later cases in the Circuit Court of Appeals fortify this conclusion.

"Nor is it correct to say that no actual controversy is present unless the defendant acted in bad faith. The requirement of bad faith is demanded in unfair competition cases as a condition of damages and of injunction against a patentee who maliciously harasses a competitor. It has nothing to do with a petition for a declaratory judgment that the plaintiff is not infringing or that the patent relied on by the defendant is invalid." Borchard, Declaratory Judgments, 2d Ed.1941, 808.

In the same tenor is an opinion of one of the Circuit Courts of Appeals referred to by the learned professor: "The defendant asserts that the plaintiff's structures infringe patents which it owns and which it claims are valid. The plaintiff denies infringement and has invited suit against it upon the patents without response. It

---

[6] Borchard, Recent Developments in Declaratory Relief, 10 Temple Law Quarterly 233, 246-248; Borchard, Declaratory Judgments, 1939, 9 Brooklyn Law Review, 1, 30-31; The Use of The Declaratory Judgment in Patent Cases, 45 Yale Law Journal 160.

[7] An alleged infringer might obtain an injunction in an unfair competition action only if the patentee's threats were an attempt in bad faith to cut off his business. See Langston, Injunctions—Threats of Infringement Suits As Unfair Competition, 10 North Carolina Law Review 300; Equity—Patent Infringement—Advantages of Declaratory Judgment Over Injunctive Relief, 34 Michigan Law Review 570.

[8] See Spencer, The U. S. Patent Law System, 47.

[9] Under Federal Rule 41(a), 28 U.S.C.A. following section 723c discontinuance without prejudice may be limited.

[10] See United Motors Serv., Inc. v. Tropic Aire, Inc., 8 Cir., 57 F.2d 479.

[11] The English procedure is perhaps more direct. By Section 26 of The Patents, Designs, and Trade Marks Act of 1883 the alleged infringer may petition for revocation of the defendant's patent. See North Eastern Marine Engine Co. v. Leeds Forge Co. [1906], 1 Ch. 324.

[12] D.C., 13 F.Supp. 596; see also Bettis v. Patterson-Ballagh Corp., D.C., 16 F.Supp. 455.

denies the validity of the patents, and has so notified the defendant at least by its bill if not prior thereto. The parties stand in adversary positions in respect to legal rights and obligations. Their differences are concrete and not hypothetical or abstract. It is of no moment in the determination of the character of the relief sought that the suit is brought by the alleged infringer instead of by the owner." Bliss & Co. v. Cold Metal Process Co., 6 Cir., 102 F. 2d 105, 108.[13]

Manifestly, the threat is as unjust if the plaintiff is not infringing a valid patent as it is if he is infringing an invalid one.

There can be no doubt that an "actual controversy" does not exist until the patentee makes some claim that his patent is being infringed.[14] The claim need not be formally asserted; nor should it be necessary that notice be given directly to the plaintiff. Aside from the cases cited in the opinion of the learned District Judge direct notice has not been stressed.[15] In fact, declaratory actions have been maintained within our own Circuit[16] where the only allegation of notice was that given to the plaintiff's customers.[17] Although defendant's notice in a trade journal was craftily phrased, it does threaten purchasers with suits for contributory infringement if they purchased plaintiff's product. Indeed the only purpose of this notice can be to make such a threat and thereby intimidate would-be purchasers into buying its own product rather than the plaintiff's. It was unnecessary if defendant really intended to enjoin the infringement. Notice to infringers that a patent exists is not a condition precedent to a subsequent action to obtain an injunction in an infringement action.[18] If the courts were to impose a requirement that direct notice by a patentee to an alleged infringer was necessary before a declaratory judgment action might be maintained, the Federal Declaratory Judgment Act would be in effect repealed so far as patent actions were concerned. Once again patentees might threaten a manufacturer's customers with suit and the manufacturer would be helpless until such time when he was directly notified. That time would of course never arrive if the patentee knew that only upon the happening of this event might he be sued. Professor Borchard sums the matter up:

"Justiciability, however, is hardly possible before the alleged infringer *or* his customers *or* dealers have been notified of the patentee's claim, *however informal the method of notification or charge*. The ques-

---

[13] Not cited in the briefs. See Samuel Goldwyn, Inc. v. United Artists Corps., 3 Cir., 113 F.2d 703; see, also, Milwaukee Gas Specialty Co. v. Mercoid Corp., 7 Cir., 104 F.2d 589; United States Galvanizing & Plating Equipment Corp. v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856; Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 106 F.2d 769; Lances v. Letz, 2 Cir., 115 F.2d 916; Creamery Package Manufacturing Co. v. Cherry-Burrell Corp., 3 Cir., 115 F.2d 980; Zenie Bros. v. Miskend, D.C., 10 F.Supp. 779; Interstate Cotton Oil Refining Co. v. Refining, Inc., D.C., 22 F.Supp. 678; Derman v. Gersten, D.C., 22 F.Supp. 877; Petersine Incubator Co. v. Bundy Incubator Co., D.C., S.D.Ohio, 34 U.S. P.Q. 251. The declaratory judgment has been asserted through counterclaims. Meinecke v. Eagle Druggists Supply Co., D.C., 19 F.Supp. 523; Knaust Bros. v. Goldschlag, D.C., 28 F.Supp. 188; contra: Hann v. Venetian Blind Corp., D.C., 15 F.Supp. 372; Counterclaim for Declaration of Invalidity of Patent in Suit for Its Infringement, 50 Harvard Law Review 357.

[14] O'Brien, Restrictions on the Usefulness of Declaratory Judgments in Patent Suits, 17 Journal of Patent Office Society 270.

[15] This element was either unmentioned completely or referred to only in the statement of facts in the following cases: E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852; United States Galvanizing & Plating Equipment Corp. v. Hanson-Van Winkle-Munning Co., 4 Cir., 104 F.2d 856; Zenie Bros. v. Miskend, D.C., 10 F.Supp. 779.

[16] Duro Test Corp. v. Welsbach St. Lighting Co., D.C., 21 F.Supp. 260; B. F. Goodrich Co. v. American Lakes Paper Co., D.C., 23 F.Supp. 682. In Tinius Olsen Testing Mach. Co. v. Baldwin-Southwark Corp., D.C., 25 F. Supp. 885, the Court recognized that an actual controversy existed but for other reasons refused to exercise its discretion.

[17] Mitchell & Weber v. Williamsbridge Mills, D.C., 14 F.Supp. 954; Northern Motors Corp. v. Divco-Twin Truck Co., D.C., 28 F.Supp. 308.

[18] See 3 Walker on Patents, Deller's Edition, 1895; O'Brien. Restrictions on the Usefulness of Declaratory Judgments in Patent Suits, 17 Journal of Patent Office Society 270, 279.

tion has arisen whether such claim or notice or charge should be required. and whether it ought not to be possible, as in certain foreign countries, for a manufacturer, definitely contemplating making and selling a certain article, to bring an action against the owner of a possibly conflicting patent for a declaration that his contemplated article does not infringe. An early adjudication of such an issue might prevent much economic waste and useless expenditure of money. The patentee himself, desiring to enjoin an infringement, need give no advance notice that his patent even exists. And yet, it seems best to limit declaratory relief for the infringer to cases in which an adversary claim has been made against him, though it may, it is believed, apply to an article not yet manufactured but only about to be manufactured. This requirement, present in practically all the adjudicated cases, refutes the fear that patentees might be harassed by prospective infringers and be obliged continually to defend their patents. *The fact that a patentee's claim of infringement is a condition precedent of this type of action places the matter of adjudication of the patent within the control of the patentee, for, if he wishes to avoid adjudication, he can refrain from making charges of infringement. But having made the charge, he then exposes himself to adjudication.* In other words, the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit. It requires an assertion of right under the patent to place the alleged infringer in gear to join issue and challenge the title." Borchard, Declaratory Judgments, 2d Ed.1941, 807 (italics ours).

In view of what we have just said, what happens to be our agreement with the learned District Court's attitude toward the unfair competition action is irrelevant. The defendant's argument that the cause should have been dismissed because plaintiff company instituted appeal subsequent to its dissolution was not seriously pressed. The question is clearly one to be determined by the law of the state of incorporation.[19] New York where plaintiff was incorporated permits dis-

solved corporations to do all "acts required to adjust and wind up its business and affairs" and to "sue and be sued in its corporate name."[20]

The judgment of the District Court is reversed.

---

[19] Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147.

[20] New York Stock Corporation Law, § 105(8); see Klaxon Co. v. Stentor Elec. Co., 3 Cir., 115 F.2d 268, reversed on other grounds, 61 S.Ct. 1020, 85 L. Ed. 1477; Grand St. Realty Co. v. Universal Textile Co., City Ct.N.Y., 191 N.Y.S. 655; Cunningham v. Glauber, 133 App.Div. 10, 117 N.Y.S. 866. See, also, Metropolitan Telephone & Telegraph Co. v. Metropolitan Tel. & Tel. Co., 156 App.Div. 577, 141 N.Y.S. 598.