## GENERAL ELECTRIC CO. v. REFRIGERATION PATENTS CORPORATION.

Civil Action No. 2601.

District Court, W. D. New York.

Feb. 19, 1946.

Rehearing Denied March 8, 1946.

William I. Morey, of Buffalo, N. Y., (Charles H. Walker and Fish, Richardson & Neave, all of New York City, of counsel), for plaintiff.

Max D. Farmer, of Buffalo, N. Y. (Watson, Bristol, Johnson & Leavenworth, Leonard A. Watson, Lawrence Bristol, and Elmer R. Helferich, all of New York City, of counsel), for defendant.

KNIGHT, District Judge.

This is a suit for a declaratory judgment that claim 11 of the Bronaugh and Potter Patent No. 2,056,165, owned by the defendant, is invalid, and if valid, is not infringed by a product contemplated to be built by the plaintiff.

The Bronaugh and Potter patent relates to a domestic electric two-temperature refrigerator. Claim 11 includes four elements, to wit: (1) Two separate insulated compartments; (2) a single refrigerating mechanism for cooling the two compartments at the different temperatures; (3) a thermostatic switch to control the refrigerating mechanism and thicker insulation for the colder compartment than that provided for the warmer.

In 1941, the plaintiff contemplated building a two-compartment refrigerator, each to be maintained at different temperature and each with a separate motor compressor unit for each compartment. Due to wartime material restrictions, plaintiff did not produce any such refrigerator until 1945. It appears from the stipulation herein that plaintiff in 1942 scheduled for production in commercial quantities a refrigerator in which each of the two compartments were to be cooled by its own separate mechanism and that it was intended by the plaintiff at some later date to manufacture a two-temperature refrigerator in which a single mechanism would be used to cool both of the compartments. In April, 1945, and the following months, it advertised extensively in publications having wide circulations and issued catalogs picturing and describing refrigerators offered for sale by the plaintiff, as containing two compartments maintained at different temperatures. There was no reference in these publications or circulars to the particular mechanism to be employed for cooling the compartments at different temperatures. The plaintiff manufactured only a few of such refrigerators.

In the correspondence between the parties antedating the commencement of this suit, the plaintiff has designated four types of proposed constructions of refrigerators as "Method #1," "Method #2," "Method #3" and "Method #5." Our concern here is as respects "Method #2" only. The plaintiff ascertained late in the summer of 1945 that it could not get the Method #1 refrigerator on the market before January, 1946, and it then scheduled the "Method #2" machine to be put into production and ready for the market in the summer of 1946. Later still in 1945, the plaintiff gave up its intention to build "Method #1" refrigerators in favor of the "Method #2" refrigerator.

There has been no production of the "Method #2" refrigerator by the plaintiff. The complaint, however, alleges that the plaintiff is "actively preparing to manufacture and sell refrigerators with two separate insulated compartments maintained at different temperatures by a single motor compressor unit." It is admitted that the "Method #1" refrigerator does not infringe.

The general purpose of the Declaratory Judgment Act, Jud.Code, § 274d, 28 U.S.C.A. § 400, is well known. Succinctly stated, it is to provide a method of procedure to bring about speedy determination of legal rights as respects differing contending parties. The "actual controversy" "must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy * * *, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000. See also: Coffman v. Breeze Corps., Inc., et al., 323 U.S. 316, 65 S.Ct. 298; Electric Bond & Share Co. v. Securities and Exchange Commission, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105; Wilshire Oil Co. v. United States, 295 U.S. 100, 55 S.Ct. 673, 79 L.Ed. 1329. "It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see

fit to begin suit, after damage had accrued." E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852, 854. It is to be construed liberally in order to effect its purpose, and every fair intendment is to be drawn from the pleading. Treemond Co. v. Schering Corp., 3 Cir., 122 F.2d 702; Borchard's "Declaratory Judgments", 1st Ed. 1934, viii.

■ The Declaratory Judgment Act authorizes suit by one charged with infringement of a patent for an adjudication that the patent is invalid or not infringed by the accused. Borchard, 2d Ed. 1941, p. 806; 1 C.J.S., Actions, sec. 18, p. 1031. Vide: Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88; Crowell v. Baker Oil Tools, 9 Cir., 143 F.2d 1003; Alfred Hofmann, Inc., v. Knitting Machines Corp. et al., 3 Cir., 123 F.2d 458; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F.2d 105; Treemond Co. v. Schering Corp., supra. Any question in this respect has been settled by the decision in Ætna Life Ins. Co. v. Haworth, supra.

Does the Act apply where a party suing a patentee has not manufactured the product in question, but, as alleged, is "actively preparing to manufacture and sell" it? Does the complaint disclose jurisdiction?

■■ As is said in "Declaratory Judgments" by Borchard, 2d Ed., supra, p. 807: "In the cases thus far decided, there have usually been two elements present, actual manufacture, use or sale by the petitioner, and charges of infringement by the patentee or his successor in interest. * * * But actual manufacture, use or sale ought not to be essential. It ought to suffice that the party charged is about to infringe or take some action which is prejudicial to the interests of the patentee, and that he is then charged or put on notice that his action is attacked as an infringement, present or prospective."

What this author has said as respects the rights of a patentee is applicable equally respecting the rights of a prospective manufacturer as against a patentee claiming infringement. An actual controversy cannot exist till the patentee has made the claim that his patent was being infringed, but the notice need not be a formal one. A claim of infringement is a condition precedent to the right to maintain the suit. Borchard, 2d Ed., supra, p. 807; Treemond Co. v. Schering, supra.

Simple notice of infringement suffices to constitute a controversy. 1 F.R.D. p. 306.

In the instant suit which was commenced on October 8, 1945, various written communications and a conference were had respecting the product proposed to be manufactured by the plaintiff. The communications between the representatives of the parties originated with the discovery by the defendant in April, 1945, of certain public advertisements of two-compartment refrigerators by the plaintiff. Thereupon the attorney for the defendant proposed an interview with respect to the possible bearing of the defendant's advertised refrigerator on the Bronaugh and Potter patent. The description and a sketch of the plaintiff's proposed two-temperature product was sent to the defendant and plaintiff asked whether it was the position of defendant that a construction of the refrigerator in accordance with the sketch attached to the letter would infringe the Bronaugh and Potter patent. Replying, defendant's counsel stated that plaintiff's proposed construction seemed to have "many of the earmarks of the Bronaugh & Potter patent," and further said: "We would prefer to consider the question of infringement on comparably full knowledge of the construction and operation of your proposed refrigerator. Can you describe for us the elements and connections of the refrigerant circuits for the freezing and for the high humidity compartments?" In answer to this communication, the plaintiff wrote a letter generally descriptive of the elements and connections of the refrigerator circuits for the two-compartments and also enclosed drawings of Methods #1, #2, #3 and #5. On May 29, 1945, defendant's attorney acknowledged the receipt of the description and sketches of these methods and stated that construction and operation according to "Methods Nos. 2 and 3 sketches are not clear in my mind from the information furnished." Defendant points out some elements of Method No. 5 which are not necessary to consider here. In this letter the counsel stated that: "Apparatus according to the showing of the Method No. 1 sketch, as I understand it, would be outside the scope of the Bronaugh & Potter patent, * * *. A license, I believe, would enable your people to utilize to the full the advantages which the patented disclosure offers, and at a less total cost than other constructions." Under date of June 8, 1945, plain-

tiff wrote that an agent of the defendant had interviewed the plaintiff relative to taking out a license under the Bronaugh & Potter patent. In that letter the plaintiff, also, stated that it was going to build and sell two-temperature refrigerators in accordance with Methods No. 1 and No. 2, and this letter also purports to and does give a "more complete idea of the operation and construction of the apparatus of Methods #2 and #3." The description of these methods enclosed in the letter seems to be quite complete as respects the construction and the operation of these two methods. In reply to the last-mentioned letter the defendant's attorney stated: "We have made a further study of the bearing of the Bronaugh & Potter patent on Methods #2, #3 and #5 in the light of your letter and of the memorandum as to Methods #2 and #3 enclosed therewith. It is our opinion that a refrigerator having a cabinet embodying the construction shown in the sketch sent with your letter of April 26th and the apparatus shown in the Method #2 sketch sent with your letter of May 11th would infringe a number of the claims of the patent. We refer you specifically to Claims 11 and 18 which were involved in our suit against Stewart-Warner, though we believe that other claims, such for example as claim 4, may also be infringed." This letter further states: "Your letter of June 8th states that you expect to build and sell refrigerators in accordance with Methods #1 and #2, which seems to indicate that further discussion of Methods #3 and #5 is purely academic and hypothetical." This letter also, after stating some details with reference to the Method No. 5 construction, states: "You will understand I am sure that a final opinion as to Method #5, as well as the other methods, would depend upon examination of an actual refrigerator operating under normal conditions of use, or at least upon the study of acceptable records of such operation. As a matter of fact, I think it would be helpful to me in reaching a complete opinion, and therefore to you in deciding the company's course, if we could meet at your convenience to make sure that we have a mutual understanding of all the pertinent facts." The last-mentioned letter was followed by another from defendant's attorney under date of August 28, 1945, suggesting a meeting between the parties or else the submission of a "typical sample of each of your refrigerators of 'Method 2,' 'Method 3' and 'Method 5,' illustrative of proposed or actual standard production, submitted for our inspection and test, or sold on an order from our client for that purpose." Later a meeting was had, and there was a discussion of various of the proposed products and the Bronaugh & Potter patent in connection with them.

The complaint alleges that the suit arises out of "an actual controversy between the parties as to the validity and scope of a patent; * * *." This statement standing alone is a mere averment of a legal conclusion. It is not sufficient to support the jurisdiction of the court. Ohio Insurance Casualty Co. v. Marr, 10 Cir., 98 F.2d 973.

To sustain jurisdiction it is necessary to show that the plaintiff has been notified that the proposed product infringes the Bronaugh & Potter patent. For the purpose of this motion, we limit the application of this rule to a charge of infringement of claim 11.

The complaint alleges that plaintiff is "actively preparing to manufacture" a two-compartment refrigerator with a single motor compressor unit. We must here assume such to be the fact, though it does appear the advertisements and circulars produced do not describe the use of a single-compressor unit or mechanism. The three circulars issued by the plaintiff in 1945 concededly refer to the Method #1 two-temperature refrigerator, designed as Model B–10. The two advertisements referred to in this proceeding, and published at about the time the circulars were issued, illustrate the Model B–10 two-temperature refrigerators, but it is not designated as such and does not mention any mechanism used.

Whether there was any claim or notice of infringement, when considering the qualifying language of the defendant in its letter of June 20, 1945, in reference to an opinion of "the other methods" is not free from all doubt. We believe that the admitted communications between the parties sustain the view that defendant claimed and gave sufficient notice of the claim of infringement of claim 11 to sustain jurisdiction. The reasons for this conclusion are the direct statement that the "Method #2" refrigerator would infringe a number of claims of the patent, with specific reference to claims 11 and 18. The plaintiff had then submitted a sketch

and a detailed description of the operation of "Method #2." [1] From this defendant could and did reach early a conclusion as regards infringement. Again, earlier, the defendant had expressed the belief that it had "many of the earmarks" of its patent.

At different times the defendant sought procurement of a license by plaintiff. Over a very considerable time defendant had been advised of plaintiff's intention to build refrigerators which obviously contained elements of claim 11. The letter of

[1] NII-8

## METHOD #2

CONTROL BULB FOR OPERATING CONDENSING UNIT

SECONDARY CONTROL VALVE INDUCING A DEFROSTING CYCLE BY "OFF-ON" TYPE OPERATION

0° TO 10°F

40°F

CONDENSING UNIT

### Features

1. Single compressor unit.

2. Operation of compressor controlled by temperature 0 deg. to 10 deg. F. compartment.

3. 40 deg. F. compartment refrigerated by a secondary system which is cooled by low temperature evaporator.

4. Temperature of 40 deg. F. compartment controlled by thermostatic valve.

The freezing evaporator which operates between 0° F. and 10° F. is cooled directly by the condensing unit and constitutes the primary refrigerating system. The temperature of the freezing evaporator is controlled by starting the condensing unit when the temperature rises to 10° F. and by stopping the unit when the temperature reaches 0° F.

The food compartment which is operated so that the air therein is above freezing, say, at an average temperature of 40° F., is cooled by means of a secondary system comprising a condenser portion in heat exchange relation with the primary evaporator and an evaporator portion in heat exchange relation with the metal liner or wall of the high temperature compartment. The condenser portion of the secondary system comprises a number of zig-zag turns of tubing in contact with the primary and the evaporator portion a number of zigzag turns of tubing in contact with the food compartment liner. The ends of the two portions are connected together to form a continuous closed loop and a control valve is connected in the loop immediately below the condenser portion. This control valve is of the "on-off" type and is to be operated either in response to the temperature of the secondary evaporator or in response to the pressure within the secondary system; it being understood that the temperature is dependent upon the pressure and that the two methods of control give equivalent results. The valve is arranged to be shut off and prevent the return of liquid refrigerant to the secondary evaporator as soon as the temperature of the secondary has reached a predetermined minimum, say, 25° F. As long as the valve is closed, refrigerant liquefied in the condenser of the secondary system collects in the condenser tubing above the valve and cannot return to the secondary evaporator. As soon as the temperature of the secondary evaporator rises to a predetermined value above freezing, say, 35°, the valve snaps to its open position and the liquid refrigerant flows into the evaporator so that active cooling begins again. During each complete cycle of operation of the secondary system, frost collects on the walls of the liner during active cooling, and then when the valve is closed the wall temperature rises above freezing and the frost melts. This is known as the "defrosting cycle".

The on-off periods in the cycles of the secondary system will not necessarily be the same as the on-off periods in the cycles of the primary refrigerating system. However, it is usually desirable to locate the thermostat controlling the primary condensing unit at such a point that it will readily be affected by the heat flowing into the low temperature evaporator from the secondary system so that when the 40° compartment calls for refrigeration the temperature of the frozen storage compartment will not be adversely affected.

The short cross connection in the secondary system shown on the sketch immediately below the control valve is provided so that when the valve is closed vaporized refrigerant may flow to the top of the secondary condenser from either end of the secondary evaporator.

June 20, 1945, if given the effect claimed by defendant, would enable the defendant to accomplish a purpose intended to be avoided by the Declaratory Judgment Act. It might sit back and take no action till the plaintiff had gone to much trouble and expense in making and putting its refrigerator on the market. We think the proper time is now to meet the question of infringement or invalidity and that a real controversy within the intent of the Declaratory Judgment Act exists.

The defendant urges that this is but a "piecemeal" suit to harass the defendant, and that it presages a multiplicity of suits. There are 21 claims in the Bronaugh & Potter patents. It is plaintiff's declared intention, if this motion is denied, to move for summary judgment on the ground that there was public use or sale of the refrigerator embodying elements of claim 11 more than two years before the claim was first presented to the Patent Office. However, defendant can set up in any counterclaim the infringement of any or all of the claims of its patent. Whether plaintiff is entitled to summary judgment in determining that claim 11 is invalid under the decision of Muncie Gear Works v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171, is a matter to be considered when presented.

Claim 11 and others of the Bronaugh and Potter Patent No. 2,056,165 were litigated in a suit brought by this defendant against Steward-Warner Corporation for infringement, and the defendant was successful and recovered a substantial verdict. The appeal to the Circuit Court of Appeals, is now pending, and it is claimed will shortly be argued before that tribunal. The defendant urges that if its motion is denied that the court stay all proceedings until final disposition of the suit last-mentioned and until the plaintiff has actually made and supplied for examination test a complete and marketable refrigerator apparatus which it plans to make and sell. It appears from an affidavit submitted by the plaintiff that the question was not raised in the Refrigeration Patents Corp. v. Stewart-Warner suit as to the invalidity of any of the claims in suit under the doctrine of the Muncie Gear case. That affidavit states that the question was not "raised or argued." We have not been furnished with the answer in the suit, but we assume in view of the fact that the plaintiff has not claimed that

it was set up in the answer that it was not. The issue, however, may have been sufficiently raised by a plea of invalidity, and if so it may be considered by the Circuit Court. This court undoubtedly should give weight to the decision of the Circuit Court, in the last-mentioned case, though it would not be binding. It is not believed that consistently with our decision here this suit should be stayed pending the production of a physical exhibit of the plaintiff's proposed refrigerator, and it is not believed that it is necessary to stay any decision herein until the Circuit Court has rendered its decision. As a matter of fact, it is reasonably certain that no final decision of this court on any motion to dismiss will be made before the handing down of the decision of the Circuit Court.

We are mindful that the court has the right to exercise certain discretion in the allowance or disallowance of this motion, but it is a legal discretion, and in order that the rights of the parties may be finally determined as speedily as reasonably possible, we believe any discretion should be exercised against the granting of this order.

Let an order be entered to accord herewith.

## On Motion for Rehearing.

This is a motion for a rehearing. It is based upon grounds considered on the motion for a summary judgment heretofore made herein. I adhere to my decision that a justiciable controversy is presented and that the court, therefore, has jurisdiction.

The plaintiff proposes to move for a declaratory judgment on the ground that the subject matter of the patent was in use more than two years prior to the amendment by which Claim 11 was added. Issue has not been joined herein. An appeal in Refrigeration Patents Corp. v. Stewart-Warner Corp. (Civil Actions No. 43 C 743 and No. 43 C 744 involving Claim 11 of Patent No. 2,056,165) is pending before the 7th Circuit, and it is said it will be argued at the approaching April term of that court. The defendant urges the stay of all proceedings herein pending determination of that appeal, in case the motion to dismiss is denied. That question may properly come up after issue is joined and any motion on the pleading has been made, and therefore, the request is now denied.