## FEDERAL TELEPHONE & RADIO CORPORATION v. ASSOCIATED TELEPHONE & TELEGRAPH CO. et al.

### Civil Action No. 872.

### District Court, D. Delaware.

### March 12, 1947.

Samuel E. Darby, Jr. (Darby & Darby), Edward D. Phinney, and Paul Kolisch, all of New York City, and E. Ennalls Berl (Southerland, Berl & Potter), of Wilmington, Del., for plaintiff.

Harry W. Lindsey, Jr., and Glen E. Smith (Davis, Lindsey, Smith & Shonts), Harry B. Sutter and Thomas R. Mulroy (Hopkins, Sutter, Halls & DeWolfe), all of Chicago, Ill., and Robert H. Richards (Richards, Layton & Finger), of Wilmington, Del., for defendants.

RODNEY, District Judge.

This is an action seeking a declaratory judgment of invalidity of certain patents of the defendants and alleging non-infringement thereof by the plaintiff.

The defendants have filed a motion to dismiss the complaint upon the ground that no actual controversy existed at the time the complaint was filed. In support of this motion to dismiss, the defendants filed two affidavits and from the complaint, motion to dismiss, affidavits and exhibits, the present motion is to be determined.

The complaint alleges that the plaintiff is engaged in the manufacture and sale of certain designated assemblies of telephone apparatus and, by one exhibit, the complaint sets out those assemblies alleged to be most frequently used and, by other ex-

hibits, it shows the typical assemblies which it alleges contain features vital to telephone traffic and service conditions; the complaint alleges that the defendants have advertised that the patents which they own or control cover operating features which are vital to today's telephone traffic and service conditions and thus, "in effect," state that the assemblies of the plaintiff did infringe the patents of the defendants.

The complaint designates seven patents of the defendants which, the plaintiff states, each contains one or more claims finding literal response in the plaintiff's apparatus, systems, or assemblies, but none of which, when properly construed, is infringed thereby. The complaint then states that none of the seven designated patents nor any other patent owned or controlled by the defendants and affecting the apparatus, system or assemblies of the plaintiff is valid.

The defendants, by their motion to dismiss and affidavits, deny that any jurisdictional actual controversy exists between the parties and insist that the complaint must be dismissed. The defendants state that the only advertisements to which the complaint could refer was an advertisement (A) in the March 9, 1946 issue of "Telephony" and in the March issue of "Telephone Engineering and Managment," and another advertisement (B) in the April 6, 1946 issue of "Telephony," and a copy of each advertisement is appended to the motion. The defendants contend that during the war they allowed the use of their patents for military and naval use without the payment of any royalty or other compensation, and that the advertisements did nothing but give notice that the period of free use of the patents without license was withdrawn. The defendants specifically deny any knowledge of the circuit arrangements, structure of apparatus, or mode of operation of the telephone systems utilized by the plaintiff, or of any knowledge of infringement by such apparatus or systems of the patents of the defendant, and deny any intention on the part of the defendants to allege such infringement.

It is entirely true that in its genesis and especially in reference to patents, the declaratory judgment procedure filled a long-felt want, and ameliorated the situation of many manufacturers and customers whose business was threatened by the action of holders of purported patents, the validity of which could not be ascertained. To such a degree had these actions of certain patent holders advanced that to these actions has been given, at times, the opprobrious name of a patent "racket." To meet this situation the declaratory judgment procedure was directed and immediately gave relief, and the courts have held that the Declaratory Judgment Act "should have a liberal interpretation, bearing in mind its remedial character and the legislative purpose." [1]

The construction of the Declaratory Judgment Act, 28 U.S.C.A. § 400, while liberal, must be a reasonable construction and confined within definite limits. The Act must not be made a vehicle of oppression by which the holders of patents can be haled into court, without cause, in defense of their patents when no actual controversy as to such patents exists, but only a desire by some plaintiff for an advisory opinion upon some feature related thereto, or to remove the patent as a possible cloud upon his own process or a limitation on his activities. As said in Coffman v. Breeze Corporation, [2] It is quite clear that a "declaratory judgment procedure is available in the federal courts only in cases involving an actual case or controversy * * * where the issue is actual and adversary, * * * and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen."

It is conceded that the important question for my determination is the presence of some threat or other form of justiciable controversy and, because the only suggestion of threat or claim of controversy in this matter stems from the two advertisements hereinbefore referred to, so we must critically examine those publications to see

---

[1] Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 137 F.2d 68–70.

[2] 323 U.S. 316, 324, 65 S.Ct. 298, 302, 89 L.Ed. 264.

if they are, reasonably or fairly, subject to the construction placed thereon by the plaintiff.[3]

The first advertisement was, as stated, published in the March 9, 1946 issue of "Telephony" and the March, 1946 issue of "Telephone Engineering and Management." It consists solely of the caption "Important Notice" and of three paragraphs as follows:

(1) That Automatic Electric Company and/or its affiliated companies own, or are exclusively licensed under, a large number of patents which have cost many millions of dollars.

(2) That during the war period the defendants have expressly permitted the use of some of their patents for military or naval use without compensation.

(3) "Now that the war is ended, we hereby give public notice that we expect no use will hereafter be made of any of our patents except by individuals or concerns duly licensed thereunder."

I shall not pause to critically discuss this advertisement. I have quoted that portion to which the plaintiff has specifically drawn my attention and to which it makes objection. It is conceded that this is the more innocuous of the two publications and, if this advertisement had stood alone, I could find in it no ground of actual controversy between the parties.

The second advertisement appeared solely in the April 6, 1946, issue of "Telephony." It is somewhat more elaborate than the preceding one, and of a length such as to preclude its entire reproduction here. This advertisement referred to the preceding one and repeated the statements of the allowance of free use of the patents accorded during the war period and of the intention to discontinue such privileges.

The advertisement drew attention to the great number of patents the defendant owned or used by license, of the great cost of development of these patents, and of their value to the telephone operating companies.

Objection is taken to a number of paragraphs of the advertisement, but if one paragraph, more than any other, may be said to be more objectionable to the plaintiff, it is this:

"These patents, and the improvements they represent, the majority of which relate to Strowger (step-by-step) automatic telephone equipment, have brought, and are bringing, large benefits to independent operating companies and their subscribers. They have made it possible for the independent industry to provide service and operating features which are not only in tune with the latest approved practices, but which are also vital to today's traffic and service conditions."

From this advertisement the plaintiff makes the deduction that the defendants have said that they have a patent for everything that is vital to telephone service today; that no one could manufacture and sell any telephone equipment which would work under today's service and traffic conditions without infringing one or more of the defendants' patents. The plaintiff alleges that its own telephone assemblies and apparatus contain features that are vital to telephone service and that the advertisement therefore, in effect, alleges infringement.

That this deduction is somewhat unwarranted may appear from a transposition of portions of the last sentence of the quoted paragraph. The pronoun "they" clearly refers to the patents, and we would read:

"They [the patents] have made it possible for the independent industry to provide service and operating features which are * * * in tune with the latest approved practices;" and

"They [the patents] have made it possible for the independent industry to provide service and operating features which

[3] The plaintiff suggests that, for the purpose of the present motion, a controversy exists because the complaint, itself, avers such controversy. This statement, standing alone, has been said to be a mere averment of a legal conclusion. General Electric Co. v. Refrigeration Patents Corp., D.C., 65 F.Supp. 75, at page 79.

are * * * vital to today's traffic and service conditions."

I cannot find in the quoted sentence the conclusion necessarily reached by the plaintiff. To me the things which are stated to be "vital to today's traffic and service conditions" are those "services and operating features" provided by the *independent industry,* and in these, of course, the patents of the defendants constitute but an element, even though a most important one.

It is expressly stated in the affidavits that during the period of World War II the defendants, without compensation, permitted the use of their patents for the manufacture of equipment for military and naval purposes and granted to the government a royalty-free license. It is also alleged that other concerns manufactured defendants' patented telephone apparatus for military and naval use during the war without requesting or obtaining the defendants' express permission.

If the foregoing facts be true, and we must accept them as such, then clearly at some point after the war, was over and hostilities had ceased, an owner of a patent must be able to terminate the moratorium on the free use of his patent and to receive whatever licensing value such patent might have. If the free users of the patent be general and unknown to the patentee, then the notice of withdrawal of the liberty of free use must, of necessity, be general and not specific. If the patentee be not permitted to withdraw the free use of the patent which had been granted because of the war, then loyalty or patriotism would require a toll too heavy to be of general acceptation. However, one may not, under the guise of former loyalty or patriotism, claim a patent monopoly he does not possess and issue threats to the general public seeking to obtain for himself undue business advantages by reason of a patent monopoly without tendering the validity of such monopoly for determination. Within these extremes fall the facts of this case.

Based upon the premise that there must be some actual controversy existent to au-

thorize the application of declaratory judgment procedure, then when, as here, the purported controversy exists by reason of a general published notice, there must exist some norm, some criteria, or some yardstick by which may be gauged the character of such notice as either, on the one hand, a harmless instrument of protection or, on the other, a sinister attempt at oppression or overreaching.

The defendants contend that these criteria may be three in number, and that two at least are present in every reported case. These criteria as suggested by the defendants may be roughly expressed as follows:

(a) Some identification of the defendant's patent;

(b) Some identification of the plaintiff's product or process;

(c) Some identification of the plaintiff himself or of someone through whom the plaintiff has an interest or claims some right.

I do not say that the language of the so-called "criteria" as suggested by the defendants, or even the substance therein expressed, may be required to be present in every case, nor do I indicate a view as to the number of those elements required to be present in any case. I use the "criteria" merely as a convenient rule in an attempt to ascertain the basic principle of the pertinent cases.

Seven cases are cited as having pertinency to the present matter, in four of which an actual controversy was found to be present, and in three of which it was found that no controversy existed. These cases will be examined in order to determine what elements were considered as essential.

In Treemond Co. v. Schering Corporation, 3 Cir., 1941,[4] the exact patent relied upon by the defendant was explicitly mentioned. The product offered for sale by the plaintiff (an importer) was explicitly charged by name and description with infringement of the cited patent of the defendant. The defendant not only published the notice complained of, and directed the advertisement to the purchasers of Estradiol and to the manufacturers and importers thereof,

---

[4] 122 F.2d 702.

but its agents informed the customers of the plaintiff that the product, Estradiol, was covered by the patent of the defendant; the threat to the customers of the plaintiff was expressly found to be the only purpose of the advertisement. Thus it will be seen that the patent of the defendant, the product of the plaintiff, and the identity of the defendant, himself, were all expressly involved.

In Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 1943,[5] the plaintiff had failed in negotiations to obtain a license from the defendant; another company (Lee-Tex Company) also failed to obtain a license and was sued by Anode as an infringer; in connection with this latter suit the president of defendant made some remarks which, with other circumstances, were held to infer that the suit of Anode v. Lee-Tex was based upon its "in-terrorem" effect upon other manufacturers. In the Dewey & Almy case the court held that in the suit against Lee-Tex Company the defendant, Anode, had publicly asserted that its patent claims embraced the methods practiced by Dewey & Almy. Thus it was held that the controversy existed. From these facts it will be seen that the court found that at least two of the "criteria" (the identification of the patent of the defendant and the product of the plaintiff) had been present and, in addition, that the infringement suit was a general "in-terrorem" notice to all manufacturers.

In the case of General Electric Company v. Refrigeration Patents Corporation, D.C. W.D.N.Y. 1946,[6] an actual controversy was found to exist. A principle question of that case was whether the Declaratory Judgment Act applied where the plaintiff was merely "actively preparing to manufacture and sell." That feature might, under certain circumstances, have pertinency in the instant case, but is not now considered. In the cited case there had been identification of the defendant's patent and of the specific claims under such patent; there had been identification of the plaintiff's process or

product, and the suggestion of infringement was evidenced by letters to the plaintiff itself.

In Raylight Electric Corporation v. Noma Electric Corporation, D.C.S.D.N.Y. 1946, 7 F.R.D. 239, a justiciable controversy was found to exist and a motion to dismiss the complaint was denied. The defendant had expressly identified its patents claimed to be infringed and communicated with the plaintiff itself focusing attention on the plaintiff's specific product. One principle question involved was the defendant's contention of its ignorance as to the infringing character of the plaintiff's product and as to this the court commented that the defendant had already made direct charges of infringement.

I am referred to three cases in which it was held that no actual controversy existed, and on facts which are claimed by the defendant to have pertinency. In Thermo-Plastics Corporation v. International Pulverizing Corporation, D.C.N.J. 1941,[7] and in Chicago Pneumatic Tool Company v. Hughes Tool Company, D.C.Del. 1945,[8] it was held that no sufficient threat had been made by the defendant, or continued in existence, so as to justify the application of declaratory judgment procedure. In both cases there had been identification of the defendant's patents and of the plaintiff itself, to whom the alleged threat had been made. In the Tool case, supra [61 F.Supp. 772], the court, in commenting on the Dewey & Almy case, said, "The persuasive fact which compelled that decision, according to the opinion, was the extraordinary licensing program which the patent-holder was forcing on the industry."

In Pomerantz v. Jean Vivaudou Co., D.C. S.D.N.Y. 1946,[9] the defendant had made to the plaintiff charges of infringement without any reference or identification of any particular patent said to be infringed. The plaintiffs referred in the complaint to a specific patent of the defendant and sought judgment of its invalidity. The court admitted that a general controversy over pat-

---

[5] 137 F.2d 68.
[6] 65 F.Supp. 75, 77.
[7] 42 F.Supp. 408.

[8] 61 F.Supp. 767.
[9] 65 F.Supp. 948.

ents existed, but denied to the plaintiff the right to select one particular patent and to test the validity of it.

In the instant case a careful and critical examination of the advertisement complained of compels the conclusion that the motion to dismiss must be granted. The advertisement identifies no patent which, by any charge of infringement, is constructively tendered for a determination of the issue of validity; it makes no actual charge of infringement by anyone; it neither identifies any person directly or indirectly whom it charges with infringement, nor identifies any product or process causing infringement.

From the facts in the affidavits, herein taken to be true, a reasonable purpose of the advertisement is accepted, as removing the advertisement from the field of a general "in-terrorem" warning to the industry as a whole. The declaratory judgment procedure must be based upon an actual controversy between the parties, which is not shown here to exist. To hold a controversy existent in this case one must go immeasurably further than any former case.

The motion to dismiss the case must be granted.