**KING KUP CANDIES, Inc.**
and
**Chocolate Lane Candies, Inc.,**
Plaintiffs,
v.
**H. B. REESE CANDY COMPANY,**
Defendant.

Civ. A. No. 5230.

United States District Court
M. D. Pennsylvania.
Sept. 28, 1955.

---

Joseph Gray Jackson, Philadelphia, Pa., Arnold, Bricker & Beyer, Lancaster, Pa., Shelley & Reynolds, Harrisburg, Pa., for plaintiffs.

McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

In a three count complaint the plaintiffs in this action seek

(1) a declaratory judgment concerning the validity of defendant's trademarks and that plaintiffs do not infringe;

(2) damages for alleged unfair competition for falsely representing trademark rights and for falsely representing or designating goods, services or containers;

(3) damages on the basis of the allegation that the "chameleon" disclaimer in Federal Trade-mark Registration No. 554,995 constitutes a false means of obtaining the registration thereby deliberately creating an ambiguity which is injurious to plaintiffs.

Defendant has moved to dismiss for the following reasons:

(1) no cause of action is alleged arising under the laws of the United States;

(2) no justiciable controversy is alleged under the Federal Declaratory Judgments Act;

(3) no claim is set forth for which relief can be granted either at common law or under the laws of the United States;

(4) as to any common-law action which may be alleged, it is not joined with a substantial and related claim under the laws of the United States.

The complaint alleges that both plaintiffs and defendant are Pennsylvania corporations; that plaintiff King Kup Candies, Inc., and defendant manufacture, and both, as well as plaintiff Chocolate Lane Candies, Inc., sell, in interstate commerce, a form of candy commonly called and known as "peanut butter cups." The complaint then sets forth two of defendant's Federal Trademark Registrations, one (No. 356,166) for "Reese's (Original) Peanut Butter Cups", and the other (No. 554,995) for "Reese's" and containing a representation of the product and of a package or a box thereof bearing the words "Reese's

Peanut Butter Cup", disclaiming the goods apart from the mark as shown. The complaint next refers to a letter which it is alleged the defendant has circulated to the trade, a copy of which was attached to the complaint as an exhibit. This letter reads as follows:

"H. B. Reese Candy Co.
Incorporated
Hershey, Penna.
April 19, 1954

" 'Made in Chocolate Town—
So They Must Be Good'
"Rexall Drug Co.
71 West 23d Street
New York 10, N. Y.

"Attention: Mr. J. V. Jaeger,
Manager—Candy
"Dear Mr. Jaeger:

"As you are no doubt well aware, H. B. Reese Candy Company has long used the term 'Peanut Butter Cups' to identify its candy product, and we have been advised by our attorneys that by reason of such use, it has acquired the status of a trade-mark of this company.

"Recently another candy manufacturer began to use the term Peanut Butter Cup on the sale of a similar candy product. We naturally were most anxious to protect our trade-mark and prevent confusion in the public mind, and after entering into negotiations with that manufacturer, the name of its product was changed to our satisfaction thereby completely eliminating our claim of unfair competition and infringement upon our trade-mark rights. In another instance, a manufacturer of a similar new item likewise recognized our trade-mark claim and abandoned its intention to use the name Peanut Butter Cup.

"It has recently come to our attention that despite the change of name of competing product, that product has been advertised and sold in chain store outlets as Peanut Butter Cups, and even where such is not the case,

such product has been frequently substituted for Reese's when a customer requests Peanut Butter Cups.

"We appreciate the fact that you have probably been unaware of our position with reference to this matter, so we are taking this means of bringing it to your attention. It is earnestly requested that we have the cooperation of your organization in discontinuing the practice of advertising and selling any candy product, except ours, as Peanut Butter Cups. We believe that, in addition to protecting our trade-mark, confusion in the mind of the purchasing public will thus be eliminated.

"We would be pleased to consider this matter further with you, and to have your reply.

"Sincerely yours,
"H. B. Reese Candy Co.
R H Reese
Treasurer
"RHReese/m"

Defendant argues that since plaintiffs do not predicate their action on any federally based right of their own, or on any trade-mark of their own registered in the United States Patent Office, but rather attack the validity of defendant's registrations, that in the absence of diversity of citizenship such a suit can only be brought in a state court.

Defendant does not deny that the letter above set forth was circularized as charged, but contends that the letter states specifically that defendant claims trade-mark rights in "peanut butter cups" only "by reason" of long use; that the right claimed is a common-law right and that plaintiffs cannot, in the absence of diversity, test the validity of defendant's claimed common-law trade-mark in a federal court.

The basis of this suit is the Federal Declaratory Judgments Act, 28 U.S.C. § 2201. This Act provides, inter alia:

"In a case of actual controversy within its jurisdiction, * * * any

court of the United States * * *, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. * * *"

■ A "controversy" as the term is used in this Act "must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[1]

■ The purpose of this Act "is to remove uncertainty from legal relations and clarify, quiet and stabilize them before irretrievable acts have been undertaken; * * * [Citing case] to avoid multiplicity of suits; [Citing Crosley Corp. v. Hazeltine Corp., 3 Cir., 122 F.2d 925, certiorari denied 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211] and to provide a remedy to a suitor, who otherwise can not have his question adjudicated until his adversary takes the initiative. * * * *"[2] Again in E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852, 854, the court said, "It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued. But the controversy is the same as previously. Heretofore the owner of the patent

might sue to enjoin infringement; now the alleged infringer may sue."

In Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68, 69, the court describes the situation prior to the enactment of said Declaratory Judgments Act as follows:

"Prior to the passage of the Declaratory Judgment[s] Act, the patentee was in a position to make oppressive use of his asserted monopoly while carefully avoiding the test of litigation with an alleged infringer. * * * [Citing text and case.] Further, the patentee might, in his own good time, sue the alleged infringer for an accounting, after large damages on account of a possible infringement had accrued. The alleged infringer could not take the initiative in litigation to challenge the validity or scope of the patent."

■ Having thus in mind the purpose and the requirements of the Act, is there here such an actual controversy of which this Court has jurisdiction? We think there is.

As in Millway Knitting Mills, Inc., v. Sanson Hosiery Mills, Inc., D.C.E.D.Pa., 108 F.Supp. 5, 6,

"Although there have been no threats of suit against the plaintiff or its customers and no direct communication between the parties, it is perfectly clear * * * that the defendant considers that the stocking [candy product in the instant case] made and sold by the plaintiff infringes the defendant's patent, * * *."

A charge of infringement or threat of suit by a patentee may be craftily phrased and need not be given directly.[3] I do so interpret defendant's letter of

---

1. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617; see also, Winsor v. Daumit, 7 Cir., 185 F.2d 41, 43.

2. Akron, Canton & Youngstown R. Co. v. Barnes, 7 Cir., 215 F.2d 423, 426.

3. Treemond Co. v. Schering Corporation, 3 Cir., 122 F.2d 702; Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68; Hartford National Bank & Trust Company v. Henry L. Crowley & Company, Inc., 3 Cir., 219 F.2d 568.

April 19, 1954. I am not impressed by defendant's assertion that it "does not and has never claimed exclusive trade-mark rights in the words 'peanut butter cup' under its federal registrations" and that "the right claimed is a common law right." The fact remains that defendant at no time has made a specific disclaimer as to its federal trade-mark and does not do so in this letter.

In Treemond Co. v. Schering Corporation, 3 Cir., 122 F.2d 702, 705, the court said, inter alia:

> "There can be no doubt that an 'actual controversy' does not exist until the patentee makes some claim that his patent is being infringed. The claim need not be formally asserted; nor should it be necessary that notice be given directly to the plaintiff. * * *"

Later the court quoted from Borchard, Declaratory Judgments, 2d Ed. 1941, 807, inter alia, as follows:

> " 'The fact that a patentee's claim of infringement is a condition precedent of this type of action places the matter of adjudication of the patent within the control of the patentee, for, if he wishes to avoid adjudication, he can refrain from making charges of infringement. But having made the charge, he then exposes himself to adjudication. In other words, the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit. It requires an assertion of right under the patent to place the alleged infringer in gear to join issue and challenge the title.' "

The letter of April 19, 1954, meets all the requirements of a "craftily phrased" charge of infringement and therefore, short of showing actual threats and charges, the plaintiff has, in my opinion, made out a perfectly clear case for relief.

Having found that a justiciable controversy is alleged under the Federal Declaratory Judgments Act, defendant's motion to dismiss the complaint as to Count I will be denied.

As to Count II. At this stage of the proceedings it is difficult to perceive how the charge of unfair competition can be based upon independent jurisdiction under Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a). However, I find no merit to defendant's final point that this count is not joined with a substantial and related claim under the laws of the United States. For the present, the motion to dismiss as to Count II will be denied.

As to Count III. Plaintiffs may or may not be able to develop facts to sustain this count. Pending such development, we will give the complaint the construction most favorable to plaintiffs. The motion to dismiss Count III will likewise be denied for the present.