**ATLANTIC PLASTICS CO., Inc.,**
Plaintiff,

v.

**HENRY HANGER AND DISPLAY FIX-
TURE CORP. OF AMERICA,**
Defendant.

United States District Court
S. D. New York.

Oct. 28, 1960.

Curtis, Morris & Safford, New York City, for plaintiff; Robert D. Spille, Daniel L. Morris, John A. Mitchell, New York City, of counsel.

Henry L. Burkitt, New York City, for defendant.

CASHIN, District Judge.

This is an action for alleged infringement of Patent No. 2,625,456 issued January 13, 1953. The patent is for a display and storage structure of the kind used by department stores to store merchandise such as shirts, sweaters, underwear, etc. The Letters Patent No. 2,-625,456 was granted to Morris Rostau on January 13, 1953 and assigned to plaintiff by Morris Rostau on April 10, 1953.

Plaintiff, a Massachusetts corporation, charges that defendant, by making and selling a similar display and storage structure, is infringing on the above patent. Defendant, a New York corporation, denies infringement and alleges the invalidity of the patent. In addition, defendant's answer contains a counterclaim charging that plaintiff's patent is invalid and asking for damages allegedly suffered by defendant as a result of unfair trade practices of plaintiff.

The subject matter of the patent is a display and storage structure made of transparent plastic material. It is a chest of drawers-type arrangement which may contain as many drawers as the individual purchaser desires. The shelf upon which the drawer rests is also the cover for the drawer directly beneath it. These shelves or lids protect the contents of each drawer from dust and dirt when in a closed position. This assembly of drawer and shelf units is primarily usable in department and specialty stores to store and display merchandise. Prior to this device the stores primarily used wooden cases or the sliding door on a shelf or counter-type arrangement. The main advantage which this new device has is that the contents of the drawers are visible even when the drawers are closed and this reduces the amount of handling of the goods by customers and salespeople. This item has enjoyed substantial commercial success and many of the better known department stores throughout the country now utilize it. In 1950 plaintiff's sales were approximately $19,000. This figure rose

steadily until 1956 when sales reached $281,000 level.

The patent in suit rests upon nine claims, of which claims "1" and "7" are representative:

"1. Display and storage structure of transparent plastic material comprising in combination vertically spaced integrally formed shelves arranged one above the other, and an integrally formed drawer slidably supported on a lower shelf and having a front end wall, a rear end wall and spaced side walls, the next upper one of said shelves providing a cover for said drawer and having a flange extending downwardly from its under surface into said drawer, longitudinally extending portions of said flange being spaced inwardly from the side edges of said shelf and overlapping upper edge portions of the side walls of said drawer, a front end portion of said flange extending transversely across the front end of said shelf and opposite an upper portion of the front end wall of said drawer, and a rear end portion of said flange extending transversely across the rear end edge of said shelf and having a portion overlapping an upper edge portion of the outer face of said rear end wall of the drawer.

"7. Display and storage structure comprising in combination a plurality of drawers each integrally formed of transparent plastic material and slidably supported between vertically spaced partition members which are integrally formed of transparent plastic material, each said member being a cover for a drawer below it and a shelf for supporting a drawer above it, said drawers having their bottom surfaces provided with longitudinally extending downwardly directed ridges and said partition members having their top surfaces provided with longitudinally extending upwardly directed ridges cooperating with said downwardly directed ridges to guide said drawers during movement thereof into and out of open position and to space the normal bottom surface of a drawer from the normal top surface of its supporting partition member."

■■ In taking up the question of validity it should be noted that generally there is no invention in substituting one type of material for another. Dewey & Almy Chemical Co. v. Mimex Co., 2 Cir., 1942, 124 F.2d 986, 987. Nor is there invention in making integral that which was formerly more than one part.

■ Looking at the prior art I find that Patent No. 2,625,456 is invalid for lack of invention and novelty over such prior art. In 1940 M. A. Brockett (U. S. Patent No. 2,201,152, hereinafter called "152") patented what was called an ingredient cabinet. The cabinet consists of a number of drawers, one above the other and side by side. The shelf remains part of the structure when the drawer is removed, and when the drawer is in place the shelf acts as a cover sealing the drawer and preventing air and dust from entering. Actually, the drawer is wedged into the cabinet and interlocks with the shelf's rear flange when it is in a closed position. This interlocking forces the underside of the shelf below the upper edge of the front wall which is in a plane above the plane of the top edges of the side walls. The upper edge of the front wall of the drawer overlaps and engages the front of the shelf flange. The rear end of the shelf extends down below the upper edge of the rear wall of the drawer. The "152" patent also has longitudinally extended portions of the flanges spaced inwardly from the side edges of the shelf. The rear end portion of the flange extends across the rear end ledge of the shelf and a portion of said flange overlaps an upper edge portion of the outer face of the rear wall.

British Patent No. 22,477 (hereinafter called "477") is for a series of drawers in a structure that is similar to plaintiff's structure. What plaintiff refers to as flanges are called rails in Patent "477", and what plaintiff refers to as shelves

or lids are called bearers. In "477" the front wall of the drawer extends higher than the back wall and the drawers slide along the bearers on narrow side members to reduce the friction. The various rails of "477" act much in the same manner as the flanges in the patent in suit in keeping air and dust out of the drawer.

In 1953 Mitten (U.S. Patent No. 2,625,455, hereinafter referred to as "455") patented a "Chest of Drawers". The walls of the chest have grooves cut in their opposite inside surfaces extending parallel to the ground into which shelves or "sheet metal separators" are set in much the same manner as the shelves in plaintiff's device. These shelves or separators have a downwardly extending rear flange which engages the rear wall of the drawer when it is in a closed position. Similarly, the top front of the drawer engages the front of the separator or shelf to provide a dust-proof drawer.

In 1910 Brien (U.S. Patent No. 952,699, hereinafter referred to as "699") patented his "Dust-Proof Drawer". It, too, consists of a drawer which can be pulled out and a shelf which remains in the structure. In operation it is much like plaintiff's "Display and Storage Structure".

In all, defendant has introduced into evidence fifteen examples of prior art.[1] In granting the patent, the Patent Office cited six patents [2] which did not include

**1.**

### United States Patents

| Number | Name | Date | | |
|--------|------|------|------|------|
| 328,015 | Davis | October | 13, | 1885 |
| 547,290 | Rodgers | October | 1, | 1895 |
| 862,757 | Powers | August | 6, | 1907 |
| 892,957 | Hayes | July | 7, | 1908 |
| 952,699 | Brien | March | 22, | 1910 |
| 1,830,044 | Vandoren | November | 3, | 1931 |
| 1,833,081 | Kilmer | November | 24, | 1931 |
| 2,044,166 | Hayden | June | 16, | 1936 |
| 2,180,229 | Frakes | November | 14, | 1939 |
| 2,201,152 | Brockett | May | 21, | 1940 |
| 2,350,280 | Holtzman | May | 30, | 1944 |
| 2,517,725 | Schweller | August | 8, | 1950 |
| 2,625,455 | Mitten | January | 13, | 1953 |

### Foreign Patents

| Number | Country | Date | | |
|--------|---------|------|------|------|
| 13,313 | Great Britain | June | 6, | 1913 |
| 22,477 | Great Britain | March | 26, | 1908 |

**2.**

### United States Patents

| Number | Name | Date | | |
|--------|------|------|------|------|
| 328,015 | Davis | October | 13, | 1885 |
| 740,677 | Monsen et al. | October | 6, | 1903 |
| 952,699 | Brien | March | 22, | 1910 |
| 1,833,081 | Kilmer | November | 24, | 1931 |
| 2,576,508 | Gluckman | November | 27, | 1951 |

### Foreign Patents

| Number | Country | Date | |
|--------|---------|------|------|
| 13,313 | Great Britain | June | 6, 1913 |

either Patent "152" or Patent "477". It does not seem necessary to go through each patent defendant has introduced and compare it with plaintiff's. Defendant has relied mainly on "152" and "477". The other patents further bear out defendant's contention of lack of invention.

Claim "7" of plaintiff's patent speaks of "longitudinally extending downwardly directed ridges" in the bottom surface of the drawer which cooperate with similar ridges on the top surfaces of the shelf to guide the drawers in and out of the structure. Another function of these ribs, although not mentioned in the claim, is to cut down the friction between the underside of the drawer and the shelf. This prevents the plastic material from getting scratched.

There is nothing new or novel about these ridges or the guiding action which they provide. In 1948 plaintiff itself made a stock box (Defendant's Exhibit B) out of a plastic material similar to that used in its "display and storage structure". These boxes are also used to store merchandise and in stores where they are in use they are generally stored one on top of the other. These boxes, which are not patented, have the exact same ridges as those claimed in plaintiff's patent, and perform the same function of preventing the boxes from getting too scratched.

■ I find nothing novel or inventive about plaintiff's structure. It is nothing more than a combination of specific features from prior patents. It is true that a new combination of old elements may be patentable. However, to be patentable this new combination must produce a result which is new, unobvious and unexpected. Such is not the case with the structure in question. It is true that none of the structures cited as examples of prior art were made out of transpar-

ent plastic. However, as was stated above, there is no invention in substituting one type of material for another. There is nothing new in using plastic to make boxes or drawers, as is evidenced by plaintiff's own plastic stock boxes. The only benefit claimed from the use of transparent plastic is the ability to see through the walls of the box or drawer and thus minimize the handling of the goods inside. This was also true of the stock boxes made by plaintiff and others prior to the development of the structure in suit. Once the idea of using plastic had been conceived it did not take more than ordinary mechanical skill to produce plaintiff's structure.

Plaintiff relies on the presumption of validity established by 35 U.S.C. § 282 and states that defendant has not overcome this presumption. I find that defendant has overcome this statutory presumption by a clear showing of anticipation by prior art.

■ Plaintiff also relies on a very respectable commercial success to sustain the validity of its patent. However, commercial success without invention will not sustain a patent, and in this case lack of invention is clear. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

Since I have held plaintiff's patent void for lack of invention there is no need to discuss plaintiff's charge of infringement or defendant's other defenses. Defendant has counterclaimed for unfair competition but has presented no evidence of it.

Since patentable invention is lacking, the patent is invalid.

The foregoing shall constitute my findings of fact and conclusions of law.

The Clerk is directed to enter judgment for the defendant forthwith in accordance with the above.