**Anton LORENZ, Plaintiff,**

v.

**F. W. WOOLWORTH COMPANY, Defendant.**

United States District Court
S. D. New York.
June 30, 1961.

Amster & Levy, New York City, for plaintiff, Morton Amster, Edward F. Levy, Jesse Rothstein, New York City, of counsel.

Henry R. Ashton, New York City, for defendant, William K. Kerr, Robert B. Whittredge, New York City, of counsel.

DAWSON, District Judge.

Anton Lorenz, plaintiff herein, brings this action for patent infringement as assignee of United States Letters Patent No. 2,670,030 (originally granted to Franklin Richardson on February 23,

1954) and United States Letters Patent No. 2,880,785 (originally granted to Fridtjof F. Schliephacke on April 7, 1959). Mr. Lorenz is a resident of Florida. F. W. Woolworth Company is a New York corporation, having an office and place of business in New York City. The jurisdiction of this Court arises under the patent laws of the United States. Lorenz' charges of infringement have been limited to claims 1 and 2 of the Richardson patent, and claims 1, 2, 7 and 10 of the Schliephacke patent.

In answer to the complaint alleging patent infringement, after making the usual denials, Woolworth alleges as an affirmative defense that the patent is invalid and void. This contention is primarily based on anticipation by the prior art. Woolworth further claims that insofar as the patents in suit were not anticipated, any modifications or combinations made were obvious and would have been apparent to anyone skilled in the art. As a counterclaim, Woolworth demands a declaratory judgment pursuant to 28 U.S.C. §§ 1338(a), 2201 and 2202. Woolworth seeks to enjoin the plaintiff and others in privity with him from charging the defendant, its customers or suppliers with infringement in respect to the patents in suit.

Woolworth, after the issuance of the patents in suit, and prior to the commencement of this action, sold within the Southern District of New York and elsewhere, reclining chairs upon which the allegations of infringement are founded. These Woolworth chairs employed metal fixtures manufactured by Middletown Manufacturing Company of Middletown, Kentucky. Middletown has openly defended this action.

■ As in most patent cases, the issues before the Court are:

1. Is this a valid patent?

2. If so, has the patent been infringed?

Reclining chairs with tilting seats and back rests, and leg rests which move up to a horizontal position when the back is tilted down, are admittedly old and well known. The patents in this case are, therefore, not patents on reclining chairs and plaintiff admitted as much in the course of the trial. Plaintiff's contention is restricted solely to the actuating devices which cause the foot rest to be elevated to a horizontal position when the back is depressed. These actuating devices were denominated by plaintiff as "hardware." It is this hardware which is manufactured by Middletown Manufacturing Company. We are, therefore, concerned in this case with questions relating to patents on hardware used in reclining chairs, rather than patents on reclining chairs themselves.

### The Richardson Patent

The Richardson patent shows a reclining chair in which the leg rest is elevated to a horizontal position. The chair has a unitary seat and back, pivoted to the base in the area of the center of gravity. Counsel for plaintiff made it clear at the trial that the invention claimed in Richardson consisted of three things: (1) an actuation control; (2) a pivotal swinging control; (3) an extension control.

The actuation control is made up of three links of equal length. In extension, the lowest link is pivoted to the base. Its opposite end is connected to a central link which in turn is pivoted at its (the central link's) midpoint to a rigid extension reaching down from the seat. In extension, the upper end of the middle link is connected to the third link, the upper end of which is in turn pivoted to the leg rest. By means of this actuation control the leg rest is raised from a vertical position to a horizontal position.

The second element of the alleged invention, the pivotal swinging control, guides the arc of travel of the leg rest. It consists of a "U"-shaped linkage which pivots about a fixed point in the front end of the seat.

The last element, the extension control, supposedly operates to extend the second portion of the leg rest as it is raised by means of a sliding bar linkage. It was

not clear at the trial that this third aspect was, in fact, workable.

It became apparent upon the trial that the plaintiff's claim as to the Richardson patent was limited to the three bar linkage, the primary merits of which are claimed to be the one-to-one ratio existing between the individual links and the resulting balance.

A study of the Woolworth chair reveals no application of the Richardson linkage.[1] As in most reclining chair patents, Richardson makes use of (we cannot go so far as to say Richardson "teaches") the principles of the reclining chair, a leg rest moving from a vertical to a horizontal position, and balance. However, though these principles are similarly found in the Woolworth chair, the hardware and actuation controls are quite different from those in Richardson.

Even if infringement could be found, it would not be actionable because of the invalidity of the Richardson patent. This conclusion springs primarily from anticipation by the prior art. However, in addition to that, it should be noted that Richardson was merely a "paper patent." It was never commercially employed. The reasons for this were made apparent on the trial where plaintiff's counsel, in explaining the inadequacies of Richardson and the reasons for its lack of commercial success, almost effectively abandoned that patent.

Of the three elements of Richardson, the leg rest extension control, if workable, has no relation to the present suit and so need not be considered. The pivotal swinging control, whereby the leg rest is "hingedly" attached, was well known in the prior art and in fact clearly anticipated by the Van Camp patent, No. 2,503,527, issued April 11, 1950. Cf., the English patent issued to Greaves & Thomas, Ltd., No. 737,396, applied for and filed about the same time as Richardson.

Plaintiff's primary claim to infringement, and thus to validity, concerns the actuation control linkage. The principle on which this linkage is founded is old in the art. Variations of it may be seen in Simpson, United States Letters Patent 988,600, issued April 4, 1911; Berry, United States Letters Patent 1,165,489, issued December 28, 1915. Cf., Greaves & Thomas, Ltd., supra. While it is true that in none of the other patents is the linkage precisely the same, e. g., a one-to-one ratio linkage is not employed, the variations or modifications are not sufficiently significant that they may be considered invention. The alterations are not such that they would not have been obvious to one having ordinary skill in the art. Since this rearrangement does not constitute patentable invention, the patent must be held invalid.

### The Schliephacke Patent

Schliephacke shows a reclining chair with a seat and back rest which are movable with respect to each other. The leg rest is elevated from a vertical position to a horizontal position by means of a conventional lazy-tong linkage and a single actuating link. The lazy-tong linkage, consisting of two sets of links, is pivoted to the leg rest at the end point of each set. The opposite ends of these linkages are pivotally connected to the seat. The actuation link is pivotally connected to the rearward linkage and to the base of the chair.

---

1. "The Court: The Woolworth chair is entirely different.

"Mr. Amster: That is correct.

"The Court: Then how do you say it infringes?

"Mr. Amster: It is a package, in a sense, the two patents together cover the Schliephacke construction and the Woolworth construction—and if they are willing to agree to a withdrawal, without prejudice, of the Richardson patent at this time, no adjudication on it, I will consult with my client and we can rely solely on the Schliephacke patent.

"The Court: It seems to me all the evidence you have put in so far relates to the Schliephacke patent, so far as anything of any value. I do not know why we are spending our time on the Richardson patent under those circumstances.

"Mr. Amster: Because of the broad scope of the claims, your Honor, as I explained." (Transcript, p. 178.)

By means of this simple connection, i. e., the lazy-tongs and the single direct actuating link, Schliephacke succeeds in achieving the three elements of Richardson: (1) the actuation control, consisting of three links in Richardson, is replaced by the single direct actuating link affixed to the end of the lazy-tongs and the base of the chair; (2) the swinging control, which in Richardson is guided by the "U"-shaped linkage, finds guidance under the constraint of the pivotally affixed actuating link. This latter link controls the arc of travel of the lazy-tong and thus of the leg rest; (3) the extension control results from the compound movement of the lazy-tong in an upward and outward direction.

Plaintiff concedes that both the lazy-tong linkage and the direct actuating link are old in the art, were well known by persons skilled in the field, and were, in fact, employed in prior patents. The case for the plaintiff rests on the following ground: While the elements of the combination are old, this particular combination is a properly patentable invention, for no one before had thought of pivotally connecting a single direct actuating link to the base of a reclining chair and the end of a lazy-tong linkage. By these means, when the occupant presses back in the chair the seat is elevated; the elevation of the seat brings into action the compound linkage, thus raising the leg rest.

In support of Woolworth's contention that the Schliephacke patent is invalid because it has been anticipated in the prior art, Woolworth has offered eighteen prior patents upon which it places varying degrees of reliance. Some of these, such as the Crump patent No. 2,575,615, the Norcross patent No. 654,352, and the Schoeps patent No. 1,438,667, merely help establish the already conceded fact that the lazy-tong linkage and the direct ac-

tuating link are each individually old in the art. Certain of the other patents are, however, of more direct concern. Various combinations of lazy-tong-type linkages with a direct actuating type of link are found in Luckhardt, Patent No. 2,-750,988, issued June 19, 1956; Lorenz, Patent No. 2,781,824, issued February 19, 1957; Lorenz, Patent No. 2,843,184, issued July 15, 1958; Bank and Katz, Patent No. 2,838,093, issued June 10, 1958; Luckhardt, Patent No. 2,870,822, issued January 27, 1959.[2]

The Court is aware of the fact that the lazy-tong-type of linkage in each of these patents is not consistently so designated. It is also aware of the fact that the linkage, which acts as the direct actuating link in Schliephacke, is not necessarily so designated in the above patents. However, in each case, a study of the linkages reveals that those functions are achieved in the prior patents, and that the linkages are, in fact, substantial equivalents. While it is true that many of the preceding patents are more complex, in the case of some, for example the Lorenz patent, the simplicity argument does not hold up. It is also the case that none of the prior patents reveals a small direct actuating link which is pivotally connected to the base of the chair. Many of the prior patents do, however, show a link connected to the base of the back of the chair, which in Lorenz, for example, is guided by a link fixed to the seat and the "actuating link." This "actuating link," as affixed to the lazy-tong linkage and the base of the back of the chair, effectively achieves the result Schliephacke attains by means of the movement of the seat and the direct actuating link.

Plaintiff's answer to the prior art is that never before had anyone thought of connecting an actuating link directly

2. In addition to the foregoing, three other patents revealing similar linkages were issued after Schliephacke. However, applications had been filed before Schliephacke's application. Krikorian, Patent No. 2,897,877, filed October 8, 1956, issued August 4, 1959; Fletcher, Patent No. 2,914,114, filed February 9, 1956, issued November 24, 1959; Fletcher, Patent No. 2,925,853, filed February 9, 1956, issued February 23, 1960.

to the base of the chair and the end point of the lazy-tong linkage.

"Schliephacke is the first to recognize that by the simple addition to a leg-rest linkage of the lazy-tong type of but a single direct actuating link it is possible to bring about an extension and elevation of the leg-rest at a substantially uniform rate enabling the construction of a reclining chair having proper balance characteristics." Plaintiff's proposed finding of fact No. 25.

The plaintiff properly states the question before the Court in its post trial brief:

"The question for this Court then is, whether or not the combination produced by Schliephacke would have been obvious at the time the invention was made to a person having ordinary skill in the art." Plaintiff's Brief After Trial, p. 66.

Once it is conceded that the lazy-tong linkage and the actuating linkage are old in the art, and, in addition, that various combinations of the two are old in the art, plaintiff's case rests solely on the particular combination devised by Schliephacke. In the creation of a reclining chair, an inventor or designer first draws up a schematic plan of the linkage to be employed. Thereafter he might prepare a template model. One of the major problems that must be overcome in the design of a reclining chair is that of balance: The chair must be balanced so that the occupant may stop at any position without tipping forward or backward. To insure that the linkage as prepared does provide satisfactory balance, a scale model of the chair may be, and often is, produced. Once the linkage plan is down on paper it would appear that the experimental shifting of the pivotal points to which the link might be attached would be simply a matter of trial and error, a form of "tinkering" by one skilled in the art.

■ The only element that is new in the Schliephacke patent is the fact that here, for the first time, a single, small, direct actuating link is pivotally affixed to the base of the chair. This would flow naturally from the experimentation undertaken by one skilled in the art. Such a rearrangement of old parts in an old combination does not constitute invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152–53, 71 S.Ct. 127, 95 L.Ed. 162; Gentzel v. Manning, Maxwell & Moore, Inc., 2 Cir., 1956, 230 F.2d 341, 343–44; Schreyer v. Casco Prod. Corp., 2 Cir., 1951, 190 F.2d 921, 923. Since 1953, the statutory test has been whether it would "have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103. The minimal rearrangement of the points of pivotal connection would be obvious to anyone skilled in the art, and as such does not constitute a patentable invention. United States Letters Patent No. 2,880,785 is, therefore, invalid.

In view of the fact that the Schliephacke patent is invalid, it is unnecessary to go to the second question of infringement.

### Woolworth's Counterclaim

■ In its answer to the complaint Woolworth has counterclaimed for a declaratory judgment pursuant to 28 U.S.C. § 2201:

"In a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. * * *"

Application of the section turns on the existence of an "actual controversy." There can be no doubt that in a patent litigation there exists an actual controversy, i. e., the controversy in suit. However, in addition to that, it is necessary that the controversy "be one that is ap-

propriate for judicial determination. * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." Aetna Life Ins. Co. of Hartford Conn. v. Haworth, 1937, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617.

Here the defendant seeks a permanent injunction against the plaintiff and those in privity with him, enjoining them "from charging or asserting * * * that the manufacture, use, sale or offering for sale of the reclining chairs heretofore sold by defendant infringes any of said patents in suit, or from suing or threatening to sue defendant or any of those in privity with it * * * for infringement of any of said patents with respect to said reclining chairs."

Having determined the controversy on the merits, the defendant's demand for an injunction is not one "appropriate for judicial determination," for it is now based on a controversy that is "academic or moot."

The purpose of the Declaratory Judgment Act is to remove uncertainty from legal relations before irreparable acts have been undertaken and to avoid a multiplicity of suits, i. e., to avoid the accrual of avoidable damages. King Kup Candies Inc. v. H. B. Reese Candy Co., D.C.M.D.Pa.1955, 134 F.Supp. 463, 466. The uncertainty for which the Declaratory Judgment Act was designed has already been removed in this case by the determination on the merits. A declaratory judgment is therefore unnecessary. In addition, it is well settled that after the existence of an actual controversy is found, whether the court should grant a declaratory judgment remains a matter for the exercise of judicial discretion. Alabama State Federation of Labor etc. v. McAdory, 1945, 325 U.S. 450, 462, 65 S.Ct. 1384, 89 L.Ed. 1725. "The actuality of the plaintiff's need for a declaration of his rights is * * * of decisive importance." Eccles v. Peoples Bank, 1948, 333 U.S. 426, 432, 68 S.Ct. 641, 644, 92 L.Ed. 784. Accord-

ingly, defendant's prayer for relief on its counterclaim is denied.

This opinion shall constitute the findings of fact and conclusions of law of the Court. So ordered.