FORMAL FASHIONS, INC. and Paul
Kellner, Plaintiffs,

v.

BRAIMAN BOWS, INC., Defendant.

No. 62 Civ. 3234.

United States District Court
S. D. New York.

March 28, 1966.

Warner & Birdsall, New York City, for plaintiffs; James E. Birdsall, New York City, of counsel.

Emanuel R. Posnack, New York City, for defendant.

McLEAN, District Judge.

This is an action for patent infringement. Plaintiffs are the exclusive licensee and owner, respectively, of U.S. Letters Patent No. 2,914,070, issued on November 24, 1959, upon an application filed on February 24, 1959. Plaintiffs seek an injunction and damages. Defendant has pleaded invalidity of the patent as an affirmative defense and has also counterclaimed for a declaration of invalidity and of non-infringement.

The patent is entitled "Body Encircling Garments." It contains eight claims. Claim 1 relates to a cummerbund. The others relate to body encircling garments in general. At the trial, plaintiffs stated that they based their charge of infringement solely on claims 1, 7 and 8 of the patent. Defendant, however, seeks a declaration of invalidity and of non-infringement as to all the patent's claims. The present controversy centers about a cummerbund. I find the facts to be as follows.

Prior to 1955 the length of a cummerbund could be increased or decreased by manipulating an elastic strip and buckle at one end of the garment. Adjustment was possible, however, only to a limited extent, i. e., within only one-quarter of

the total range of sizes, which run from size 27 to size 48. It was thus necessary for a retailer to stock four different sizes of cummerbunds in order to be in a position to offer to every customer a garment which could be adjusted to fit his particular girth.

In about 1956 Oscar Goldenberg, who will be referred to again later in this opinion, hit upon the idea of attaching a strip and buckle at each end of a cummerbund. This made the garment almost twice as adjustable as before, so that its length could now be increased or decreased up to almost one-half of the total range of sizes. The retailer thereafter needed to stock only two different sizes of cummerbunds in order to be able to supply nearly every customer.

There was still a need, however, for a cummerbund so constructed that it could be adjusted to fit every size. A "universal size" cummerbund would enable a retailer to satisfy every customer with a single garment. Plaintiff's cummerbund filled that need. It can be shortened to size 27 and expanded all the way up to size 48.

Plaintiff Formal Fashions, Inc. has manufactured this cummerbund since it became the exclusive licensee of plaintiff Kellner, the patent owner. Formal Fashions, Inc. has sublicensed others to manufacture it. The garment has been a commercial success. In the space of approximately five years, the universal size cummerbund has taken over a substantial part of the cummerbund market, approximately 60 per cent of it.

Plaintiff Kellner (and his co-inventor, Block, who assigned his rights to Kellner) accomplished this result in the following manner. Kellner extended the strips on each end of the cummerbund so that they became long and narrow. At the end of each strip he affixed a "hook member" which actually looks more like an anchor. He sewed a strip of cloth along substantially the entire length of the inside surface of the garment. He cut slits in this strip at regular intervals. The slits are numbered to correspond to size numbers. The two slits nearest the middle are numbered 27 and the numbers progress outward from that point so that number 48 appears at each outer end.

One who wishes to wear a cummerbund size 27 folds over each end and inserts the hooks in the number 27 slits. If he wishes a size 32, he inserts them in the number 32 slits, etc. The ends are thus folded over against the inside surface of the garment. The more they are folded, the smaller the garment is. The cummerbund is fastened around the wearer's abdomen by what the patent describes as "cooperating means at the bends of said folded side portions, respectively, for releasable securement to each other." In less technical English, this means that there is a portion of a buckle at the bend or fold on one side of the cummerbund and another portion of a buckle at the bend or fold at the other side. The respective portions can be buckled together to hold the garment around the wearer's waist and can be unbuckled when he wants to take it off. These buckle parts slide freely along the garment ends so that no matter where the bend occurs (which depends on how much of the ends are folded back against the middle of the garment), the buckle parts are always at the bends, which constitute the respective extremities of the folded garment.

The device works well, and although it seems simple, apparently no one had thought of it before Kellner. Plaintiffs offered some evidence to the effect that others had tried to construct a universal size cummerbund and had failed. Defendant offered no evidence to the contrary.

For some years before Kellner applied for his patent, there was in general use in the menswear industry an adjustable bow tie which was apparently the invention of the Goldenberg family. Three prior patents relied upon by defendant relate to such ties, Patent No. 2,125,715, issued to Claire Goldenberg on August 2, 1938, Patent No. 2,208,026, issued to Claire Goldenberg on July 16, 1940, and Patent No. 2,884,642, issued to Martin

Goldenberg and Malcolm S. Goldenberg on May 5, 1959.

Oscar Goldenberg testified at the trial. The relationship between Oscar, Claire, Martin and Malcolm was never explained, but it seems to be assumed by both sides that Oscar was associated with the other Goldenbergs. Indeed, he testified that he obtained Patent No. 2,125,715, which, according to the record, was issued to Claire. He was familiar with the other patents.

The adjustable bow tie makes use of a strip along the inner surface of the garment, marked off into sizes. Instead of slits, as in plaintiffs' cummerbund, this strip is provided with loops. One end of the strip is furnished with a hook. This end can be folded over against the inner surface of the tie and the hook can be inserted in the desired loop in order to shorten the tie to the desired size. The hook is of a somewhat different shape from that on plaintiffs' cummerbund.

Toward the end of 1959 Oscar Goldenberg, who manufactures menswear, including cummerbunds, heard of plaintiffs' new universal size cummerbund. He thereupon entered into an arrangement with defendant whereby defendant would make a universal size cummerbund which would be like plaintiffs', except that the strip would be like that on the Goldenberg tie, that is, it would use the same shape of hook and would use loops instead of slits. Oscar Goldenberg agreed to sell to defendant the strip and certain other parts of the cummerbund for assembly by defendant. Moreover, he agreed to indemnify defendant against any suit for infringement and to pay at least part of any counsel fees incurred by defendant in defending such a suit.

Since sometime in 1961 defendant has manufactured a cummerbund which is exactly like plaintiffs' cummerbund except that the strip and the hook are like those on the Goldenberg bow tie. Defendant makes the body portion, buys the strip and other parts from Oscar Goldenberg and assembles the garment.

Defendant has manufactured and sold a substantial quantity of them.

Oscar Goldenberg made a similar proposal to another manufacturer of cummerbunds, Kaff. Kaff declined it. He had a license from plaintiff Formal Fashions and he continued to operate under that license.

In addition to selling parts to defendant, Oscar Goldenberg himself manufactures and sells a substantially identical cummerbund.

I have no doubt that Oscar Goldenberg and defendant have knowingly capitalized upon plaintiffs' idea. They have done so in reliance on their belief that they could successfully defend any suit for infringement that plaintiff might bring. Plaintiff has now brought that suit, thereby putting defendant's opinion to the test. I am called upon to decide the two questions of law which it involves: (1) is plaintiffs' patent valid; (2) if so, has defendant infringed it?

### The Issue of Validity

In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (Feb. 22, 1966), the Supreme Court has recently redefined the three conditions of patentability, each of which must be satisfied if a patent is to be found valid. The article covered by the claims must be (1) useful, (2) novel, and (3) non-obvious. The requirements of utility and novelty are expressed in 35 U.S.C. §§ 101 and 102. The requirement of non-obviousness is expressed in 35 U.S.C. § 103, enacted in 1952, which provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * * "

*Graham* holds that Section 103 is merely a codification of the rule laid down by

a line of judicial decisions beginning over. a century ago with Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1850). As to this section, the Court in *Graham* said:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." (383 U.S. at 17–18, 86 S.Ct. at 694)

Plaintiffs base their case for infringement on three claims of the patent, 1, 7 and 8. I will consider these claims first. Claim 1, which is the only claim in the patent which specifically refers to a cummerbund, reads as follows:

"A cummerbund, comprising a main body portion adapted to cover the abdominal part of the body of the wearer, side portions extending longitudinally from the opposite sides, respectively, of said main body part and terminating in an elastic free end part, each of said side portions being foldable in overlapping relation with the inside surface of said garment, each of said side portions defining a bend when it is folded, said inside surface comprising transversely spaced upper and lower parts separated by a strip therebetween, said transversely spaced parts and said strip extending longitudinally for the entire extent of said garment, said strip being of a reinforced material and having a plurality of longitudinally spaced slits each of which is adapted to receive for releasable securement thereto complementary securing means provided at the free end part of each of said folded side por-

tions whereby said free end parts are releasably securable to said inside surface for selectively adjusting the effective overall longitudinal extent of the garment, and cooperating means at the bends of said folded side portions, respectively, for releasable securement to each other when said garment is on the wearer, said securing means at the free end part of each of said side portions comprising a hook member adapted to be releasably secured to said inside surface at a selected one of said slits, said cooperating means comprising complementary buckle parts having apertures in which said side portions, respectively, are inserted and with respect to which said buckle parts are movable toward the bends of said folds."

At first glance, claim 7 looks very much like claim 1, but painstaking study of the mass of verbiage reveals certain differences, i. e.:

1. Claim 7 refers to a body encircling garment rather than to a cummerbund.

2. It omits the word "elastic" in the phrase "elastic free end part."

3. Whereas claim 1 speaks of the side portions "being foldable in overlapping relation with the inside surface of said garment," claim 7 says with respect to these side portions, "being foldable with its folded over part being in overlapping surface-to-surface contacting relation with the inside surface of said garment for the entire longitudinal extent of the folded over part, * * *."

4. Claim 7 omits the concluding eight lines of claim 1 which read:

" * * * said securing means at the free end part of each of said side portions comprising a hook member adapted to be releasably secured to said inside surface at a selected one of said slits, said cooperating means comprising complementary buckle parts having apertures in which said side portions, respectively, are inserted and with respect to which said buckle parts are movable toward the bends of said folds."

This difference comes down to this:

Unlike claim 1, claim 7 does not specify that the "securing means" is a hook member or that the "cooperating means" are buckle parts.

Claim 8 is identical with claim 7 except that it does specify, in language identical with that of claim 1, that the "securing means" is a hook member.

█ Defendant relies upon six prior patents as constituting the prior art. Two of them are the Goldenberg patents Nos. 2,208,026, and 2,884,642 previously mentioned. In addition, defendant points to two patents to Richman, No. 1,791,638 dated February 10, 1931, and No. 2,501,-741 dated March 28, 1950, a patent to Mayer No. 2,045,280 dated June 23, 1936, and a patent No. 717,189 dated December 30, 1902 to Goldin. All these patents, except the Goldin patent, relate to neckties. The Goldin patent is concerned with a contraption described as a combined suspenders and belt. None of these patents was cited by the Examiner who passed upon the patent here in suit. This fact detracts to some extent from the presumption of validity which a patent enjoys. Lorenz v. F. W. Woolworth Co., 305 F.2d 102 (2d Cir. 1962); Zoomer, Inc. v. Paillard Products, Inc., 258 F.2d 527 (2d Cir. 1958), cert. denied, 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230 (1958).

None of the articles covered by these patents looks like plaintiffs' universal size cummerbund. But one or another of them discloses each of the separate elements, with one possible exception, that goes into the cummerbund. These patents involve garments which encircle the body. They disclose that the ends of the garment may be folded over and fastened in order to make the garment smaller. The Goldin belt employs buckles. Goldenberg's neckties, as previously mentioned, employ a sized strip with loops engaged by a hook. Concededly the loops are the equivalent of plaintiffs' slits.

The one possible exception is that claims 1, 7 and 8 of plaintiffs' patent state that the main body of plaintiffs' garment consists of "upper and lower parts separated by a strip *therebetween*." This concept of a garment made up of separate portions with a strip between them does not appear in any of the patents relied upon by defendant. But it does not appear in plaintiffs' actual garment either, for the cummerbund which plaintiffs manufacture consists of a single piece of cloth, with the strip superimposed upon it. Plaintiffs themselves assert that this makes no difference. They take the position that this phrase in the claims must be construed to mean the superimposed strip which plaintiffs' cummerbund, as actually manufactured, employs. The neckties also have a superimposed strip. Therefore, plaintiffs cannot be heard to say, and indeed they do not attempt to say, that this phrase in the claims distinguishes plaintiffs' patent from the necktie patents.

The significant difference between the garments described in the prior patents and plaintiffs' garment is that plaintiffs' garment is adjustable throughout the entire gamut of sizes 27 to 48, whereas the others are not. Plaintiffs' cummerbund can be folded over and fastened to the extent of 50 per cent of its length, without interfering with the appearance of the garment. This is because, as stated in the claims, the strip to which the folded ends are fastened extends throughout the entire longitudinal extent of the garment.

Plaintiffs do not assert that any separate element of their article is novel. They claim novelty for the combination of these old elements, a combination never previously disclosed, which accomplishes a new and useful purpose.

Plaintiffs' patent meets the first condition of validity. The article is useful. And, in my opinion, it also meets the second. The combination is novel. The critical question is whether it meets the third test. Is it non-obvious to a person having ordinary skill in the art?

This has been called a "misty" test. (Reiner v. I. Leon Co., 285 F.2d 501, 503 (2d Cir. 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961)).

But however misty the test may be, the court must apply it, as best it may, with the guidance of the principles recently enunciated in *Graham* and in the light of the decisions which have heretofore applied it in a wide variety of factual situations.

In Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941), the Court struck down a patent which adapted a thermostat (previously used on other electrical appliances) to an automobile cigarette lighter. No longer did the driver have to concentrate on guessing the proper time to remove the heating unit from his dashboard, for the thermostat turned off the heating apparatus when a certain temperature was reached.

The Court conceded that the functions performed by the combination were new and useful. But it found that the combination was lacking in "invention" and that the patent was therefore invalid. "A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' * * *, even though the new result had not before been contemplated." (314 U.S. at 91, 62 S.Ct. at 41)

In *Graham*, the Supreme Court has said, as I understand the opinion, that the formula that a device lacks "invention" is merely another way of saying that the improvement was obvious, under the rule of *Hotchkiss* and of Section 103.

In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), the patent covered a supermarket counter equipped with a movable frame or rack which could be pulled to move packages of groceries. The district court and the court of appeals each held that the device was a new and useful combination of old elements and that the patent was therefore valid. The Supreme Court reversed. It held the patent invalid because it lacked "invention." Here again, after *Graham*, I believe that this decision must be read as a holding that the novel combination was obvious and therefore unpatentable.

Subsequent to the enactment of Section 103, a number of decisions have applied the rule of that section to combination patents and have held that, although the combination was novel, it was obvious, and hence that the patent was invalid. See, for example: Welsh Mfg. Co. v. Sunware Products Co., 236 F.2d 225 (2d Cir. 1956); Bussemer v. Artwire Creations, Inc., 231 F.Supp. 798 (S.D.N.Y. 1964); Modella Mfg. Co. v. Famous Bathrobe Co., 151 F.Supp. 542 (S.D.N.Y. 1956), aff'd on opinion below, 244 F.2d 954 (2d Cir. 1957).

These authorities compel the conclusion that the combination with which we are here concerned was also obvious. This is not a complicated device. No technical expertise is required to understand it. In essence, it is an application of the principle that the more one folds a piece of cloth, the shorter it becomes. What the inventor did was to make the ends longer so that more of the entire garment could be folded over without affecting the appearance of the main portion. To my mind it is clear that this was the sort of improvement to which Section 103 applies.

We have here, it is true, some evidence as to the "secondary considerations" of unsolved needs, failure of others, and commercial success. It is not enough to tip the scales. Kellner testified that it took him about two months to develop his idea. How hard others tried is problematical. The fact that the garment filled a need in the cummerbund trade and was therefore successful does not in itself mean that the improvement was not obvious. I conclude, therefore, that claims 1, 7 and 8 are invalid because they run afoul of Section 103.

Defendant seeks an adjudication also as to the validity of claims 2 to 6 inclusive. These claims are broader and less specific versions of claim 1. For example, claim 2 reads:

"A body encircling garment, comprising a main body portion, side por-

tions extending longitudinally from the opposite sides, respectively, of said main body portion and terminating in a free end part, each of said side portions being foldable with its folded over part being in overlapping surface-to-surface contacting relation with the inside surface of said garment for the entire longitudinal extent of the folded over part, each of said side portions defining a bend when it is folded, means for releasably securing said free end part of each of said folded side portions to said inside surface at a selected one of a plurality of spaced points along said inside surface for selectively adjusting the effective overall longitudinal extent of the garment, and cooperating means at the bends of said folded side portions, respectively, for releasable securement to each other when said garment is on the wearer."

Claims 3, 4, 5 and 6 differ from claim 2 in minor respects which it is unnecessary to set forth in detail.

■ These claims have no greater validity than claims 1, 7 and 8. They contain no specific element which is novel. The combination of old elements which they disclose is subject to the same infirmity as the combination disclosed by claims 1, 7 and 8. I conclude, therefore, for the same reason, that claims 2 to 6 inclusive are invalid.

### The Issue of Infringement

■ Since plaintiffs' patent is invalid, it is clear that plaintiffs cannot maintain an action for its infringement. It is thus unnecessary, as far as plaintiffs' action is concerned, to consider whether defendant's garment infringes. Nor is there any occasion to render a declaratory judgment on defendant's counterclaim as to this aspect of the case.[1] Furthermore, it would not be appropriate to grant defendant's prayer that plaintiffs be enjoined from asserting that defendant has infringed the patent. Lorenz v. F. W. Woolworth Company, 195 F.Supp. 719 (S.D.N.Y.1961), aff'd, 305 F.2d 102 (2d Cir.1962).

### Defendant's Attorneys' Fees

■ Defendant seeks an award of attorneys' fees under 35 U.S.C. § 285 which authorizes such an award to the prevailing party in "exceptional cases." Such an award must generally be based upon a finding of bad faith on the part of the losing party. AMP Incorporated v. Burndy Corp., 332 F.2d 236 (3rd Cir. 1964), cert. denied, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964); Park-In-Theaters, Inc. v. Perkins, 190 F.2d 137 (9th Cir. 1951).

■ There is no such bad faith here. Defendant's application for attorneys' fees is denied.

Pursuant to Rule 52(a) this opinion constitutes the court's findings of fact and conclusions of law.

Judgment will be entered dismissing the complaint and declaring that Patent No. 2,914,070 is invalid.

Settle judgment on notice.

1. The nature of the argument on this issue may be noted, although it is unnecessary to decide it. Defendant's garment concededly is substantially the same as plaintiffs'. Defendant contends that its garment must be compared, not with plaintiffs' garment, but with the claims of plaintiffs' patent. Defendant asserts that its garment does not infringe those claims because the claims state, as I have already pointed out, that the garment consists of "spaced upper and lower parts separated by a strip therebetween." Defendant's strip is not placed between upper and lower parts but is sewed upon a single piece of cloth, just as plaintiffs' is.