**John F. MASTANTUONO and Frank Vilardi, Plaintiffs,**

**v.**

**Carl RONCONI, Jr., d/b/a Ronconi Lawn Mower Service, Defendant.**

**No. 64 Civ. 263.**

United States District Court
S. D. New York.

Dec. 20, 1967.

the subject-matter of which was a "grass catcher", a container-type device which, when affixed to the front of a lawn mower, serves as a receptacle for grass clippings.

2. Having subsequently discovered that the descriptive language in their patent was too broad in that it included within its scope much of the prior art consisting of catchers of canvas construction, plaintiffs sought a reissue patent, the purpose of which was to limit patent coverage to catchers "of rigid integral construction".

James P. Malone, Mineola, N. Y., for plaintiffs.

Kane, Dalsimer & Kane, New York City, Arthur J. Hansmann, Racine, Wis., of counsel, for defendant.

3. The Patent Office, considering and citing certain of the prior art,[1] granted plaintiffs' application, and on September 27, 1960 issued Reissue Patent No. 24,877 (the patent in suit), which has but one claim reading as follows:

"For use with a lawn mower having upstanding side frames, each having a hook on its upper portion and at least one cross-member interconnecting said sides; a grass catcher *of rigid integral construction* having a bottom, sides and front end, the bottom extending rearwardly and terminating in an upwardly convex portion, said catcher having rearwardly extending rods attached to upper portions of said sides and having in-turned and downwardly extending terminal portions, said inturned portions being adapted to have engagement with said hooks and said downwardly extending terminal portions being adapted to have contact with portions of said cross-member to hold said catcher in suspended position." (Plaintiffs' Exh. 1.)

## OPINION

TENNEY, District Judge.

This is an action in which plaintiffs, owners and operators of a landscape gardening and maintenance corporation, filed suit on January 24, 1964, under the Patent Act of 1952, 35 U.S.C. §§ 283, 284, for infringement of United States Letters Patent No. Re. 24,877, issued to plaintiffs on September 27, 1960.

Plaintiffs seek an injunction and damages from defendant, who concededly sells and uses the accused device in the course of operating his lawn mower service corporation.

### Findings of Fact

1. On May 6, 1958, plaintiffs were issued an original patent, No. 2,833,104,

---

1. The following are those patents cited by the Patent Office and presumed by said office to best exemplify the prior art in the field (see Defendant's Exh. A):

| | | |
|---|---|---|
| Kelley | 421,370 | Feb. 11, 1890 |
| Trisler | 601,008 | Mar. 22, 1898 |
| Campbell | 621,445 | Mar. 21, 1899 |
| Curran | 877,299 | Jan. 21, 1908 |
| Boss | 1,039,355 | Sept. 24, 1912 |
| Boss | 1,076,014 | Oct. 21, 1913 |
| Lontz | 1,816,980 | Aug. 4, 1931 |
| Stegman | 1,819,133 | Aug. 18, 1931 |
| Sherrow | 2,494,062 | Jan. 10, 1950 |

4. The stated purpose of this patent was to provide a new and improved grass catcher having rigid construction, consisting of an integral one-piece, all-metal body, which is easy to mount and demount from the mower (with a minimum amount of adjustment), and which would eliminate the tendency, prevalent in catchers constructed of canvas material, to bounce, droop, become water-soaked, stretch, drag along the ground and generally wear out.

5. Plaintiffs, however, failed to disclose or discover and the Patent Office failed to consider certain prior art which, upon consideration, makes plaintiffs' invention insignificantly distinguishable from such prior art.[2]

6. Plaintiffs' patent is not only a mere combination of elements already existing in the prior art but is virtually identical in construction with catchers in existence long before the issuance of the patent in suit.

7. At no time have plaintiffs commercially manufactured or sold their invention, nor has anyone sought a license from them to do so.

8. The accused catcher, used and sold by defendant, although similar in many respects to plaintiffs' patent, is neither of integral construction nor possesses a bottom which terminates in an upwardly convex portion.

9. There is not sufficient evidence presented herein to warrant a finding of bad faith on the part of plaintiffs in instituting this action and, therefore, this Court cannot, in its discretion, award reasonable attorney's fees to defendant.

*Discussion*

Defendant admits that it sells and uses the accused catcher (Plaintiffs' Exh. 10) but contends that plaintiffs' patent is invalid on the grounds that (a) it lacks the novelty required for patentability under 35 U.S.C. § 102 and (b) the subject-matter of plaintiffs' patent and the prior art were such that the subject-matter as a whole was obvious at the time of invention to a person having ordinary skill in the art and therefore unpatentable under 35 U.S.C. § 103.[3]

■ Over the years, and in the face of a general aversion to granting private monopolies in goods and businesses, Congress has seen fit to implement a series of Patent Acts which allow to an inventor a limited private monopoly in his invention or discovery as an inducement to man's pursuit of knowledge, and stimulate the outgrowth of creative contribution in society. Because the grant of a patent is in conflict with the generally free nature of disclosed ideas, Congress has clearly enunciated in the Patent Act of 1952, 35 U.S.C. §§ 101, 102, 103, that in order for an invention to be patentable, it must possess novelty and utility, and not have been obvious at the time the invention was made to a person having ordinary skill in the art to which the invention relates. Graham v. John Deere Co., 383 U.S. 1, 12, 13, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965); Reiner v. I. Leon Co., 285 F.2d 501, 503 (2d Cir. 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961).

A consideration of the patent in suit clearly shows that its entire assembly is nothing more than a combination of ele-

2. The following patents were not cited by the Patent Office an examples of the prior art (see Defendant's Exh. A):

| Twiggs | 370,361 | Sept. 20, 1887 |
|---|---|---|
| Coldwell | 426,984 | Apr. 29, 1890 |
| Heydrick | 707,324 | Aug. 19, 1902 |
| Jerram | 1,798,021 | Mar. 24, 1931 |
| Clapper | 2,057,417 | Oct. 13, 1936 |
| Godwin | 2,152,252 | Mar. 28, 1939 |
| Clapper | 2,191,426 | Feb. 20, 1940 |
| Picha | 2,207,353 | July 9, 1940 |

3. Defendant also contends that plaintiffs' patent is invalid under 35 U.S.C. § 112 in that the language within the patent itself, describing plaintiffs' invention, was so vague, indefinite and incapable of being understood that no person skilled in the art could determine the limits of the monopoly asserted or construct and use said invention upon the expiration of the patent.

This Court finds it unnecessary to consider this Section 112 defense in that the patent in suit is clearly invalid on the other grounds asserted above.

ments, all of which existed in those patents constituting the prior art. Without needlessly reciting the various combinations of prior patents, each of which, when combined, represents an equivalent of the patent in suit, suffice it to say that the Godwin patent No. 2,152,252, issued on March 28, 1939, contains every element in plaintiffs' patent but for "a bottom terminating in an upwardly convex portion", which missing element is found in the Twiggs patent No. 370,361, issued on September 20, 1887. The "Canvas Estate" catcher (Defendant's Exh. A–1), manufactured and sold from 1948 to 1956 by Jacobsen Manufacturing Co., the same company which manufactured the accused catcher, possessed every quality of the patent in suit except for "a rigid integral construction" and "a bottom terminating in an upwardly convex portion." The rigid integral construction, however, had previously existed in the Twiggs patent No. 370,361, the Godwin patent No. 2,152,252 and others.

A combination of old devices, however, is not per se unpatentable. Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). In the majority opinion, Mr. Justice Jackson, describing the requisites for a patentable combination, stated that "the conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." Ibid.; see Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961); Delamere Co. v. Taylor-Bell Co., 249 F.Supp. 471, 475 (S.D.N.Y. 1966); Copease Mfg. Co. v. Cormac Photocopy Corp., 242 F.Supp. 993, 1004 (S.D.N.Y.1965); Lorenz v. F. W. Woolworth Co., 195 F.Supp. 719, 723 (S.D. N.Y.), aff'd, 305 F.2d 102 (2d Cir. 1961); Atlantic Plastics Co. v. Henry Hanger & Display Fixture Corp., 190 F.Supp. 225, 228 (S.D.N.Y.1960), aff'd, 305 F.2d 100 (2d Cir. 1962).

The stated object of the patent in suit, as previously mentioned, was to provide a rigid structure which would prevent bouncing, drooping, dragging along the ground, disfigurement of the lawn, and a general wearing out of the material constituting the catcher body. A secondary object of plaintiffs' invention was to provide a grass catcher which would be easy to mount and demount from the mower and which could be rapidly connected to the mower with a minimum amount of adjustment (see Plaintiffs' Exh. 1). After having duly considered all the testimony and evidence before this Court, it appears obvious that the patent in suit brings nothing more in the way of inventiveness to the art than had existed prior to plaintiffs' application. Catchers of a rigid construction were known to the trade in the latter part of the nineteenth century and have been widely used since. There is equally absent any indication that plaintiffs' device facilitates the mounting or demounting of the catcher from the mower to a degree which could be considered a patentable contribution.

Even going so far as to give plaintiffs the benefit of a finding that the patent in suit is distinguishable from the prior art, specifically with regard to the elements of "integral construction" and "a bottom extending rearwardly and terminating in an upwardly convex portion", this Court is compelled to find that both of these elements of plaintiffs' invention were obvious at the time the invention was made to persons having ordinary skill in the art of constructing grass catchers and, consequently, unpatentable under Section 103 of the Patent Act of 1952. Graham v. John Deere Co., supra; Lorenz v. F. W. Woolworth Co., 195 F. Supp. at 721; see American Safety Table Co. v. Schreiber & Goldberg, 269 F.2d 255, 266, 267 (2d Cir.), cert. denied, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185 (1959). In fact, with regard to the integrated nature of plaintiffs' catcher, there simply is no invention in making integral that which was formerly more than one part. Atlantic Plastics Co. v. Henry Hanger & Display Fixture Corp., 190 F. Supp. at 226.

It is also not inconceivable that these elements may have, in fact, been considered in the field prior to plaintiffs' application and rejected because of the obvious advantages inherent in being able to disassemble the catcher body, i. e., in shipping and storing, as well as the additional carrying space which is achieved in bodies with bottoms terminating in an upwardly *concave* portion.

In any event, this Court finds the patent in suit to be invalid for lack of novelty under 35 U.S.C. § 102 and for obviousness under 35 U.S.C. § 103.

Assuming, *arguendo*, that plaintiffs' patent is a valid one, the accused catcher does not infringe it. To establish infringement of a patent which protects a device which consists of a combination of elements, all of which are found in the prior art, a patent holder must show that every element of his combination invention has been infringed by the accused device. Delamere Co. v. Taylor-Bell Co., supra at 477.

The accused catcher differs from plaintiffs' patent in two of the essential elements. The accused catcher is neither of integral construction nor does its bottom terminate in an upwardly extending convex portion. By plaintiffs' own definition, a device of integral construction is one which consists of a one-piece unit in the form of a single sheet of metal bent to specifications, which to no extent can be dismantled. In plaintiffs' device, the U-shaped rod which bends around the catcher, forming two rearward extensions with inturned portions and with downwardly extended terminal portions, adapted to the purpose of affixing the catcher to the mower, is attached to the catcher body by bending the metal at the lip of the catcher body around the rod itself. Thus, since no part of the catcher can be detached from the remainder without damaging the device, plaintiffs' catcher is "of integral construction". The rods on the accused device, however, can be detached at will by a simple removal of the pertinent bolts, thereby making this device a non-integral one. Although plaintiffs try to stretch their original

definition of "integral" to cover all catchers which, *in their functioning environment* act as a single unit, the Court is of the opinion that this contrived definition would render all catchers "devices of integral construction", thereby making the distinctive integral condition no distinction at all.

Finally, it is obvious to the eye that the bottom of the accused catcher does not terminate with a convex portion.

### Conclusions of Law

1. This Court has jurisdiction over the parties and the subject-matter of this litigation.

2. The patent in suit, United States Letters Patent No. Re. 24,877, is invalid for lack of novelty under 35 U.S.C. § 102, and for obviousness under 35 U.S.C. § 103.

3. The accused device does not infringe the patent at bar.

4. Plaintiffs' demand for an injunction and damages is in all respects denied.

5. The complaint is dismissed and judgment shall be entered in favor of the defendant.